**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **UNILOC 2017 LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Case No. 2:18-cv-491, -492, -493, |
| | § | -494, -495, -496, -497, -498, -499, -500, |
| **GOOGLE LLC,** | § | -501, -502, -503,-504 |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF STANDING AND IMPROPER VENUE UNDER RULES 12(B)(1) and
12(B)(3)**

**TABLE OF CONTENTS**

**Page**

I.  THE PRESENT ACTION SHOULD BE DISMISSED FOR LACK OF STANDING ................................................................................................ 1

    A.  Fortress Holds a Right to Sub-license the Patents-in-Suit .................................... 1

    B.  Fortress's Right to Sub-license Deprives Uniloc 2017 of the Right to Sue ............. 2

    C.  Uniloc's Submissions Regarding CF Uniloc and Other Related Entities Highlight Uniloc's Existing Standing Problems and Raise New Questions ............ 5

II.  VENUE IS NOT PROPER IN THIS DISTRICT ................................................ 6

    A.  GGC Servers in Third-Party Facilities Do Not Establish Venue ............................ 6

    B.  Discovery on Uniloc's Other Venue Allegations Is Unwarranted ......................... 10

    C.  Congress Intended a Nexus Requirement .......................................................... 10

    D.  Uniloc Failed to Adequately Allege Acts of Infringement in the District .............. 11

III.  PRE-SUIT INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED .......... 14

CASES

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
No. 16-454, 2017 WL 3668597 (D. Del. Aug. 24, 2017) ............................................................3

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
604 F.3d 1354 (Fed. Cir. 2010)................................................................................................3, 4

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
No. 5:14-CV-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018) .............................................9

*BMC Software, Inc. v. Cherwell Software, LLC*,
No. 1:17-cv-1074, Dkt. 55 (E.D. Va. Dec. 21, 2017) .......................................................6, 7, 9

*Bonneville Assocs. v. Barram*,
165 F.3d 1360 (Fed. Cir. 1999)................................................................................................15

*Burgess v. Cox*,
2015 WL 5578310 (E.D. Tex. July 30, 2015) ..........................................................................14

*CDx Diagnostic, Inc. v. United States Endoscopy Grp., Inc.*,
No. 13-cv-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018)........................................8

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)..................................................................................................................11

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*,
434 F.3d 320 (5th Cir. 2005) ....................................................................................................15

*HomeBingo Network, Inc. v. Chayevsky*,
428 F. Supp. 2d 1232 (S.D. Ala. 2006)......................................................................................9

*In re Cray*,
871 F.3d 1355 (Fed. Cir. 2017)...................................................................................6, 7, 10, 11

*In re Google LLC*,
914 F.3d 1377 (Fed. Cir. 2019) (en banc) (Reyna, J., dissenting)..............................................6

*In re Google LLC*,
No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018)......................................................6

*In re Provider Meds, L.L.C.*,
907 F.3d 845,856 (5th Cir. 2018) ...............................................................................................2

*In re ZTE (USA), Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ................................................................................10

*Kaia Foods, Inc. v. Bellafiore*,
   70 F. Supp. 3d 1178 (N.D. Cal. 2014) ......................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...................................................................................................2

*LLC v. Symantec Corp.*,
   C.A. No. 3:18-CV-01554, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ..............6, 9

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   ___ F.3d ____, No. 2018-1581, 2019 WL 2292485 (Fed. Cir. May 30, 2019) ........2, 3

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
   814 F.3d 1343 (Fed. Cir. 2016) ..................................................................................3

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
   486 U.S. 825 (1988) ...................................................................................................8

*Mann. Clouding IP, LLC v. Google Inc.*,
   61 F. Supp. 3d 421 (D. Del. 2014) .............................................................................4

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007) ...............................................................................3, 4

*Nano-Proprietary, Inc. v. Canon, Inc.*,
   537 F.3d 394,400 (5th Cir. 2008) ...............................................................................2

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ................................................................................14

*OptoLum, Inc. v. Cree, Inc.*,
   No. CV-16-03828-PHX-DLR, 2017 WL 3130642 (D. Ariz. July 24, 2017) ............10

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
   No. 17-CV-1725, 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018) ............................8, 9

*Regents of Univ. of Minnesota v. Gilead Scis., Inc.*,
   299 F. Supp. 3d 1034 (D. Minn. 2017) .......................................................................9

*SEVEN Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018) ...............................................................6, 9, 11

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
601 F.3d 1319 (Fed. Cir. 2010)....................................................................4

*Sorenson v. Sec'y of the Treasury,*
475 U.S. 851 (1986)......................................................................................8

*Stonite Prod. Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942)......................................................................................7

*Taylor v. Charter Med. Corp.*,
162 F.3d 827 (5th Cir. 1998) ........................................................................9

*TC Heartland LLC v. Kraft Foods Group Brands LLC*
137 S. Ct. 1514 (2017).................................................................................7

*WiAV Sols. LLC v. Motorola,*
631 F.3d 1257 (Fed. Cir. Dec. 22, 2010) ...............................................2, 3

*Uniloc USA, Inc. v. ADP*
No. 18-1132, 2019 WL 2245938 (Fed. Cir. May 24, 2019) ........................2

## STATUTES

28 USC § 109, Act of March 3, 1897 Chapter 395, 29 Stat. 965 ..................7, 8

28 U.S.C. § 1400(b) ..................................................................................7, 11

28 U.S.C. § 1694, Act of June 25, 1948, Chapter 646, 62 Stat. 945 ................8

## OTHER AUTHORITIES

Leahy-Smith America Invents Act, Pub. L. No. 112-29, §  18(c), 125 Stat. 329, 331
(2011)...........................................................................................................8

## I.   THE PRESENT ACTION SHOULD BE DISMISSED FOR LACK OF STANDING

### A.   Fortress Holds a Right to Sub-license the Patents-in-Suit

Years before Uniloc 2017 existed, Uniloc Lux granted Fortress a right to sub-license the patents-in-suit that would irrevocably and automatically revert to Fortress's use following the occurrence of certain Events of Default delineated in the Revenue Sharing Agreement.  Turner Ex. A at §2.1  These Events of Default included Uniloc's (1) representation in a March 15, 2017 amendment that its patents were not subject to invalidity challenges when, in fact, they were; and (2) failure to meet established revenue milestones on March 31 and June 30, 2017.  Mot. Exs. D at §§ 4.5, 6.2.2, Ex. M, Ex. N.  Uniloc does not dispute these events occurred.  Instead, it argues that this grant to Fortress did not encumber the rights to the patents-in-suit Uniloc 2017 later acquired.

Uniloc argues that a March 15, 2017 amendment "cured any alleged default to Fortress's reasonable satisfaction."  Opp. at 6.  But the Revenue Sharing Agreement requires that, to effect a cure, an amendment must "by its express terms cure[] such Event of Default."  The March amendment does nothing of the sort.  Mot. Ex. D at § 7.3.  It contains the very misrepresentation constituting an Event of Default, and therefore cannot cure its own misrepresentation.  Nor could the March amendment cure the missed revenue shortfall that occurred three months later.

Abandoning the text of the March amendment, Uniloc points to declarations from Fortress's James Palmer.  But those declarations, and Mr. Palmer's statement that "[F]ortress did not regard Uniloc as in default," do not show that Uniloc cured the Events of Default.  Mr. Palmer does not describe actions by Uniloc Lux to fix any Event of Default.  Nor does he identify an amendment that "by its express terms cures" an Event of Default.  Mot. Ex. D at §7.3.  At most, the declarations suggest implied waiver by Fortress, but the Revenue Sharing Agreement forbids such waivers.  *See* Mot. Ex. D at§ 7.3(x) (need written waivers for Events of Default).  Uniloc does not dispute the missed revenue milestones and validity misrepresentations, and the effect of those Events of Default

under the Agreement is clear.[1]  Uniloc's arguments that they were cured lack merit.[2]

Uniloc's reliance on a May 2018 "Payoff and Termination Agreement" is also misplaced. The Patent License Agreement between Uniloc-Lux and Fortress expressly provides that "[a]ny rights and obligations which by their nature survive and continue after any … termination of this Agreement will survive and continue…."  Turner Ex. A at § 6.  The license rights granted to Fortress were "irrevocable" and therefore "by their nature survive and continue" ***after termination*** of the Patent License Agreement under that Agreement's terms.  *Id.*  This is consistent with binding precedent cited in Google's motion, *see In re Provider Meds, L.L.C.*, 907 F.3d 845,856 (5th Cir. 2018) ("irrevocable … indicates that the license may not be revoked for any reason"); *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394,400 (5th Cir. 2008) ("'irrevocable' is defined as 'unalterable; committed beyond recall' … or '[i]mpossible to retract or revoke'"), whereas the cases Uniloc cites do not even discuss irrevocable licenses.  And the Payoff and Termination Agreement— which lists the Patent License Agreement as one of several agreements to be terminated—does not claim to terminate Fortress's irrevocable right to sub-license or override the Patent License's survival provisions.

### B.   Fortress's Right to Sub-license Deprives Uniloc 2017 of the Right to Sue.

In *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, ___ F.3d ____, No. 2018-1581, 2019 WL 2292485, at *8 (Fed. Cir. May 30, 2019), the Federal Circuit held that its prior approach

---

[1] This case is unlike *Uniloc USA, Inc. v. ADP*, in which the defendants argued IBM obtained a right to license Uniloc patents based on the breach of a Uniloc-IBM agreement with different terms from the agreement at issue here.  No. 18-1132, 2019 WL 2245938 at *2-*3.  There, the Federal Circuit expressed concerns over defendants' assertion of breach of an agreement to which they were not a party, as the assertion "potentially involves disputes of materiality, potential opportunities to cure, and available remedies, all of which are consummate contract issues to be resolved between the parties."  *Id.* at *3.  Here, Google is neither asserting breach nor seeking to enforce the Uniloc-Fortress agreement. Rather, Google relies on the necessary effect of a defined event in that agreement.

[2] Uniloc's claim that Google is "rehash[ing] arguments already rejected by [Judge Alsup]," Opp. at 1, overlooks that Google relies on events not addressed in Judge Alsup's decision.  Moreover, that decision is not binding on this Court and Uniloc ignores that a motion to reconsider the decision in *Uniloc v. Apple* is pending.

to standing could not be squared with *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  In place of that approach, *Lone Star* holds: (a) constitutional standing is focused on an injury in fact to exclusionary rights, as addressed in *WiAV Sols. LLC v. Motorola*, 631 F.3d 1257 (Fed. Cir. 2010); and (b) whether a plaintiff holds all substantial rights in a patent is a question of "statutory jurisdiction."  Neither exists here and thus dismissal is warranted.[3]

As to constitutional standing, the *Lone Star* court relied on *WiAV* for the proposition that "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." 2019 WL 2292485 at *6.  As *WiAV* explained, an alleged infringer's "ability to obtain" a license "from another party with the right to grant it" means the plaintiff "does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer."  631 F.3d at 1266-67.[4]  This is consistent with both *Lone Star* and *Mann*, Uniloc's primary authority, both of which hold that a third-party's unconstrained right to sub-license renders a plaintiff's enforcement rights "illusory."  *See Lone Star*, 2019 WL 2292485 at *4 (non-party's right to "grant a sublicense and negate [a] lawsuit" renders "enforcement rights … illusory, at least in part."); *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1362 (Fed. Cir. 2010) ("in *Speedplay*, we held that a licensee's right to grant royalty-free sublicenses … rendered illusory the licensor's right to sue").  Fortress's right to sublicense similarly renders Uniloc's right to exclude illusory and

---

[3] Google's motion addressed both the lack of injury to an exclusionary right and the absence of "all substantial rights." Motion at 8-12.  That the Federal Circuit no longer deems the latter an Article III standing issue does not remove the issue from the scope of Google's motion.  As the Federal Circuit acknowledged in *Lone Star*, framing the "all substantial rights" issue as jurisdictional or statutory does not change the analysis.  2019 WL 2292485 at n.6.

[4] Uniloc's attempts to distinguish *WiAV* as dealing with an exclusive licensee rather than an assignee miss the mark. First, *Lone Star* draws no such distinction.  Second, this same argument was rejected in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-454, 2017 WL 3668597 at *2 (D. Del. Aug. 24, 2017).  As noted in Google's motion, *Acceleration Bay* held that the "slightly different context" of an assignee versus an exclusive licensee does not "change[] the analysis or conclusion" that a patent owner lacked standing under *WiAV* due to a third-party's licensing rights.  *Id.* Uniloc's response does not address *Acceleration Bay*;  instead it criticizes *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343 (Fed. Cir. 2016), which Google's motion did not cite.

warrants dismissal here.

As to statutory standing, Uniloc's reliance on *Mann* to argue that it holds "all substantial rights" is misplaced.  Uniloc reads *Mann* as a response to *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007), but *Mann* never mentions *Morrow* and no Federal Circuit decision suggests the connection Uniloc attempts to construct.  Nothing in *Mann* disturbs *Morrow*'s explanation that, while parties can divide patent rights "as they see fit … this does not mean that the chosen method of division will satisfy standing requirements."  *Id.* at 1341 n.8.  Instead, *Mann* explains that when "a plaintiff lack[s] a sufficiently large portion of rights … that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders of rights … joined."  *Mann*, 604 F.3d at 1360.

Moreover, as Uniloc acknowledges, *Mann* dealt with, and its ruling presumes, "a transfer of rights from an owner/licensor **who, before the transfer, had possessed all substantial rights** in the patent." Opp. at 10.[5]  Uniloc's argument skips past this foundational point and presumes that Uniloc Lux (1) held "all substantial rights in the patents-in-suit" and (2) transferred all substantial rights to Uniloc 2017.  But Uniloc neither specified what rights Uniloc Lux held nor submitted the agreement defining the rights transferred to Uniloc 2017.  Instead, Uniloc relies on a recordation of purported assignments and mistakenly argues that recordation "create[s] a presumption" that all substantial rights were transferred under *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010).  In fact, "recording … has **no bearing on the question of what substantive rights were actually transferred**," the question at issue here and in *Mann*.  *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, n.12 (D. Del. 2014).  A *SiRF* presumption arises "if the validity of the Agreement

---

[5] Emphasis added, internal quotation marks omitted, and citations omitted throughout unless otherwise indicated.

is challenged," which is not now at issue.[6]

What is known is that Uniloc Lux did not hold and Uniloc 2017 did not receive all rights in the patents-in-suit.  The rights Uniloc 2017 acquired were subject to not only Fortress's rights, but also to "***certain liabilities and obligations of Uniloc Lux***" and "upon the terms and subject to the conditions" of the March 28, 2018 Asset Purchase Agreement.  Turner Ex. C at 1-2.  Despite bearing the burden on standing, Uniloc opted not to submit the agreement that defines the rights Uniloc 2017 acquired.  Uniloc's withholding of the agreement contradicts *Mann*'s instruction that "***we '****must** ...* ***examine the substance of what was granted.****'*"  604 F.3d at 1359.  Rather than submit the relevant Uniloc Lux-Uniloc 2017 agreement showing the "substance of what was granted," Uniloc submitted *other* agreements, invoked an irrelevant presumption, and refused to provide Google with any additional documents.[7]  Uniloc 2017 cannot establish it has rights that support standing just by saying it is so.

### C.    Uniloc's Submissions Regarding CF Uniloc and Other Related Entities Highlight Uniloc's Existing Standing Problems and Raise New Questions

As explained above, dismissal for lack of standing is supported by the express terms of the Uniloc Lux-Fortress agreements as applied to the undisputed record.   Uniloc's additional submissions do not dictate a different result and, in fact, raise more questions as to who owns and controls the patents-in-suit.  With respect to Fortress, for example, Uniloc relies on its Payoff and Termination Agreement to suggest Fortress was bought out and its rights in the patents extinguished. But, "Payoff Amount[s]" under the agreement are to be paid to two newly introduced entities—CF

---

[6] It is unclear if a presumption would attach even if the validity of the Agreement were challenged.  The recordation (and Uniloc's brief) point to a *May 2018* assignment, but Uniloc 2017 obtained the rights upon which it now relies under a ***March 2018*** agreement.  *See* Turner Ex. C at 1-2, Turner Ex. B at 4 ("Purchase Agreement ... dated as of March 28, 2018").  To Google's knowledge, no agreement with that date has been recorded.

[7] Contrary to its claim that "Uniloc 2017 inquired of Google what documents it sought – indicating that it would provide them," Uniloc has refused to provide Google with standing-related discovery, including the Uniloc Lux-Uniloc 2017 agreement.  *Compare* Opp. at 2 n.2 *with* Ex. U (Uniloc refusing to provide requested documents).

DB and CF DB 2017—**not to Fortress** who holds the right to sub-license.  Turner Ex. C at 1, Sched. 1.  Both are listed as "Fortress Entities" and name the same signatory and president, Constantine M. Dakolias, as Fortress.  *Id.* at 13, 14.  Mr. Dakolias was also listed as president and signatory for CF Uniloc Holdings and Uniloc 2017, the latter being the plaintiff.[8]

Dealings between CF Uniloc and Uniloc 2017 raise similar questions about what do not appear to be arm's length transactions.  After standing problems were raised in another case, Uniloc 2017 amended its agreements with CF Uniloc in an effort to repair the problem on the eve of filing suit against Google.  While Google's arguments regarding the Fortress sublicense alone warrant dismissal, to the extent the Court is disinclined to grant that relief at this stage, Google respectfully submits that the case should be stayed pending discovery on this threshold issue.

## II.     VENUE IS NOT PROPER IN THIS DISTRICT

Uniloc does not dispute that Google has no offices, employees, or real property in this District.  Instead, it primarily argues that GGC servers hosted in third-party facilities themselves constitute Google's regular and established place of business.  Google respectfully submits that Uniloc's position is inconsistent with the text of the venue statute and the doctrinal framework laid out by the Federal Circuit in *In re Cray*, 871 F.3d 1355, 1362 (Fed. Cir. 2017), and would effectively restore the pre-*TC Heartland* regime through a backdoor, *see In re Google LLC*, 914 F.3d 1377, 1381 (Fed. Cir. 2019) (en banc) (Reyna, J., dissenting).  This Court should therefore reject it.  Next, Uniloc rehashes its conclusory allegations about other alleged Google equipment that may exist in the District and online services used across the nation.  But Uniloc bears the burden of proving venue is proper, and its sparse allegations regarding other equipment and services do not come close to

---

[8] Uniloc's submissions did not include, *inter alia*, Uniloc 2017's operating agreement or the March 28, 2018 Asset Purchase Agreement under which Plaintiff Uniloc 2017 acquired the rights to the patents-in-suit that it contends confer standing upon it alone.  As to the latter, Uniloc's termination agreement acknowledges that Uniloc 2017 took those rights subject to "certain liabilities and obligations of Uniloc Lux relating thereto."  Uniloc Exhibit C at 1, 2.

establishing that Google has a regular and established place of business in this District, nor do they warrant venue discovery (which Google offered and Uniloc declined).  Uniloc has not justified a discovery fishing expedition to shore up the venue case it failed to make in its Complaint.  Finally, Uniloc does not connect most of its venue allegations to the asserted patents, or support its allegations of acts of infringement in six cases (2:18-cv-492, -495, -497, -500, -503, and -504).

### A.     GGC Servers in Third-Party Facilities Do Not Establish Venue

In *SEVEN*, the Federal Circuit declined mandamus review of the question whether GGC servers constitute a regular and established place of business in order "to allow the issue to percolate in the district courts."  *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018).  That percolation has only reinforced Google's position.  The Federal Circuit's denial of mandamus was followed by Chief Judge Lynn's decision that servers hosted by third parties cannot constitute a "regular and established place of business" because "business conducted from … servers involves 'electronic communications,' which the Federal Circuit specifically stated cannot constitute a place."  *CUPP* Cybersecurity*, LLC v. Symantec Corp.*, C.A. No. 3:18-CV-01554, 2019 WL 1070869, at *2-3 (N.D. Tex. Jan. 16, 2019).  That reasoning echoed the holding in *BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-1074, Dkt. 55 at 3 (E.D. Va. Dec. 21, 2017):  "To the extent … servers provide 'space' from which a business may operate, any such space would be virtual space and virtual space explicitly fails the *Cray* test."  Combined with *Personal Audio*, there are three district courts that have found servers in third-party facilities to be insufficient to establish venue.  Uniloc's position is thus contrary to the majority position among district courts.

While Uniloc emphasizes *Cray*'s observation that "each case depends on its own facts" (Opp. at 22), that observation in no way precludes certain fact patterns from failing the venue test as a matter of law.  Indeed, the Federal Circuit followed its observation in *Cray* by holding that the patent venue "statute thus cannot be read to refer merely to a virtual space or to electronic communications

from one person to another"—a legal holding that cuts across numerous factual scenarios in which it might arise. *Cray*, 871 F.3d at 1362. Likewise, as *CUPP* and *BMC* recognize, the presence of servers owned by a defendant in third-party facilities in a district do not qualify as regular and established places of business, full stop. No additional fact could change that bottom-line legal conclusion, which turns on the proper construction of the venue statute.

The patent venue statute's history also reinforces Google's position. In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, the Supreme Court consulted the history of § 1400(b), which originated in the Act of March 3, 1897. 137 S. Ct. 1514, 1518-20. "[T]he Act of 1897 was a restrictive measure, limiting a prior, broader venue." *Stonite Prod. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942). Uniloc's position would expand venue far beyond Congress' limited intent. And technological developments after the statute was enacted do not relieve courts of the obligation to "focus on the full and unchanged language of the statute." *Cray*, 871 F.3d at 1359. Moreover, the Act of 1897 addressed both venue and service:

> In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpoena upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought.

Section 48 of the Judicial Code, 28 USC § 109, Act of March 3, 1897 ch. 395, 29 Stat. 965. Both the venue and service laws codified in the statute use the phrase "regular and established place of business." That phrase must be given the same meaning throughout the statute. *See Sorenson v. Sec'y of the Treasury*, 475 U.S. 851, 860 (1986) ("normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning'").

The service law provides that service is proper upon the "agent or agents engaged in

conducting" the business conducted in a defendant's regular and established place of business. Congress has not changed that language. *See* 28 U.S.C. § 1694 ("in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business"); Act of June 25, 1948, ch. 646, 62 Stat. 945. Patent venue and service laws have always "presume[d] that a defendant with a 'place of business' in a district will also have 'agents conducting such business' in that district." *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725, 2018 WL 1478047, at *4 (S.D.N.Y. Mar. 26, 2018). As the bill's proponent put it, "if infringers open up a permanent place of business…. [w]hy not give the court jurisdiction to try the case where the individual resides, where the witnesses are?" 29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey).[9]

The principle that servers in third-party facilities are insufficient to establish a regular and established place of business in a district is consistent with the many cases holding that, absent agents or employees conducting business there—or physical interaction with customers—the location of a defendant's equipment does not amount to a regular and established place of business.[10] Put simply,

---

[9] Uniloc also points to Section 18(c) of the America Invents Act, which provides that an ATM machine "shall not be deemed to be a regular and established place of business" for certain venue purposes. Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(c), 125 Stat. 329, 331 (2011). According to Uniloc, that provision implies that ATM machines otherwise **would** be places of business. But an equally "plausible construction of Congress' action in" 2011 is that it was merely "clarifying the original meaning" of the venue statute. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 839 (1988). And "the opinion of this later Congress as to the meaning of a law enacted 10 years earlier does not control the issue" in any event. *Id.*

[10] *See, e.g.*, *CDx Diagnostic, Inc. v. United States Endoscopy Grp., Inc.*, No. 13-cv-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018) ("While Defendant's customer service reps may 'typically' retrieve materials from the storage units to visit customers within this District, no 'employee or agent of [Defendant] conduct[s] business at' the storage units, whatsoever."); *Peerless Network*, 2018 WL 1478047, at *4 (a place of business for venue purposes "requires some employee or agent of the defendant to be conducting business at the location in question"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-CV-2022, 2018 WL 400326, at *7-10 (N.D. Ohio Jan. 12, 2018) (defendant's equipment is insufficient to establish a regular and established place of business where defendant had no employees in the district and the technician responsible for the district lived outside the district); *Regents of Univ. of Minnesota v. Gilead Scis., Inc.*, 299 F. Supp. 3d 1034, 1043 (D. Minn. 2017) ("offsite storage lockers [leased] through a third party" do not "constitute a sufficiently regular and established physical foothold ... in Minnesota"); *HomeBingo*

-9-

the GGC servers in this District are not real property, and there are no Google employees or agents present where they are located; they thus cannot be a regular and established place of business.

Moreover, the specific circumstances of the servers at issue here only bolster that basic legal conclusion.  To begin, GGC servers in this District were drained and ceased serving traffic within days of Uniloc's filing of its complaints (Mot. Ex. O, ¶ 13), reinforcing that there is nothing "established" about those servers within the meaning of the statute.  Google also does not have "total control over the GGC server's physical presence within the ISP," *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 953 (E.D. Tex. 2018), as the ISP locates and installs the server in a place of its choosing and the service agreements can be terminated "at any time" for the convenience of either party.  Mot. Ex. O, McCallion Decl. ¶¶ 9, 12.[11]  Indeed, Google has no physical access to the servers as long as the service agreements are in force.  *Id.* ¶ 10.  And Google's website has never "denoted that GGC servers are places 'of Google'," *SEVEN*, 315 F. Supp. 3d at 965, rather, it notes the airports—not the ISPs hosting GGC servers—closest to the ISPs.  *See* https://peering.google.com/#/infrastructure.   In short, there is nothing "regular and established" about GGC servers in the District and ISP facilities hosting those servers are not the "place of" Google.  *See also* Mot. at 19-21; *Cupp*, 2019 WL 1070869, at *3 (servers are "not places from which Symantec conducts its business"); Mot. Ex. A, *BMC*, No. 1:17-cv-1074, Dkt. 55 at 3, 5 ("a storage rack for a specific piece of personal property cannot satisfy" the "place of the defendant" element).

## B.      Discovery on Uniloc's Other Venue Allegations Is Unwarranted

For the balance of its venue allegations, Uniloc rests on its complaint and argues that venue

---

*Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006) (unstaffed slot machines operating in a district do not render them a regular and established place of business).

[11] Uniloc seeks to disregard Google's evidence here by asking the Court, without any supporting authority, to take judicial notice of the evidence and findings from *SEVEN*.  The Court should deny that bare request.  *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830-31 (5th Cir. 1998) (denying request to take judicial notice of district court's factual findings in another case and recognizing limitations on judicial notice even of documents from another case).

discovery would be warranted if the Court finds GGC servers do not establish venue.[12]  But "the Plaintiff bears the burden of establishing proper venue," *In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018), and Uniloc's additional allegations are far more tenuous and contrary to the evidence.  *See* Mot. at 22-26.  More fundamentally, Google offered and ***Uniloc declined a discovery period*** that would have allowed Uniloc to investigate its allegations prior to its Opposition.  The Court should deny Uniloc's belated request for venue discovery that would unnecessarily multiply the proceedings.  *See OptoLum, Inc. v. Cree, Inc.*, No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (under the "totality of the circumstances ... discovery, additional briefing, and an evidentiary hearing on the issue of venue would be contrary to the just, speedy, and inexpensive determination of the merits of the action"); *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1187 (N.D. Cal. 2014) (denying venue discovery when plaintiff "offered nothing ... that leads the Court to believe that venue discovery w[ould] change the result").

### C.     Congress Intended a Nexus Requirement

Uniloc does not dispute that its venue allegations are unrelated to nearly all the patents-in-suit.  *See* Mot. at 27.  Instead, it argues that requiring a "regular and established place of business" accomplishes the purpose of the patent venue statute in that it ensures the defendant has a sufficient nexus to the venue to avoid suit in a forum where only isolated instances of infringement occurred.  Opp. at 23.  First of all, that would only be remotely plausible if a regular and established place of business is one "where a permanent agency is established," as Congress intended.  *Cray*, 871 F.3d at 1361; *see* 29 Cong. Rec. 1900 ("The main purpose of the bill is to give original jurisdiction to the court where ***a permanent agency transacting the business*** is located, and ***that business is engaged***

---

[12] The one exception is Uniloc's citation to a third-party website purporting to explain Google Fi, which Uniloc uses to argue that Google's description is "false."  Opp. at 23 n.13.  Putting aside that a third-party website is inadmissible hearsay, the content does not further Uniloc's assertion that Google Fi's reliance on third parties to offer phone services amounts to the establishment of a regular and established business in the District.

*in the infringement*.") (statement of Rep. Lacey, proponent of § 1400(b)'s predecessor).  Moreover, dispensing with a nexus requirement would mean that the rule for venue is more generous than the rule for personal jurisdiction, in direct conflict with the Federal Circuit's admonition that Section 1400(b)'s "place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction."  *Cray*, 871 F.3d at 1361.  The Court should therefore require a nexus between the alleged place of business and infringement.  Indeed, if the Court were to interpret "regular and established place of business" to include any place where a defendant's equipment is located, regardless of the presence of a defendant's agents, a nexus requirement would be necessary to save the statute from absurdity.  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

### D.    Uniloc Failed to Adequately Allege Acts of Infringement in the District

Uniloc misconstrues Google's argument about infringing activity in this District in an attempt to shoehorn it into the *SEVEN* decision.  Opp. at 26.  Google's primary argument is not that it alone must "perform[ ] each step of the alleged infringement in this District."  *Id*.  Rather, as described below, Google alleges that *no* alleged infringing activity takes place in this District.

*2:18-cv-492 Case:*  Uniloc argues that Paragraph 83 of its Complaint discusses a YouTube user in the District uploading videos that will be re-encoded and delivered back to other YouTube users in the District, and that infringement thus occurs here.  But, Paragraph 83's allegation that YouTube lets "users search YouTube content, upload videos, create and manage playlists, and more" says nothing about *users utilizing video encoding techniques provided by YouTube*—the alleged infringing activity.  Further, while Paragraph 83 alleges that infringement is caused by YouTube's use of a VP9 codec, Paragraph 84 shows YouTube does not facilitate uploading of user videos using VP9.  *See* Compl. ¶ 84 (showing "Recommended upload encoding settings," but not showing VP9

as a supported encoder).  Uniloc also argues that "local news channels in the EDTX deliver video to Google for recording and delivery back to EDTX residents as a 'video stream'."  Opp. at 27.  Again, however, Uniloc says nothing of VP9, nor does not it identify any local news channels in the District delivering video to Google.[13]   Finally, Uniloc alleges that encoded video is delivered through GGC servers but, again, makes no allegation that the purportedly infringing encoding techniques are performed on those servers.

     *2:18-cv-495 Case:*[14]   The claims in the -495 case require both "stations" and "control stations," at least one of which is necessary for infringement.  *See* Ex. V, '676 patent (claim 1).  Uniloc's Opposition does not dispute that there are no accused "control stations" (*i.e.*, Google "SAS") in the District.  Instead, Uniloc introduces a new, but equally insufficient, contention that the "stations" of Claim 1 "broadcast through the EDTX."  But Uniloc did not allege that any accused "stations" reside in this District, nor has Uniloc identified any stations purportedly owned by Google in the District.  The websites it relies upon in its Opposition in no way suggest that Google owns, operates or controls accused equipment in this District.  Rather, they confirm that Google SAS may be used by various entities to access spectrum, and the Complaint does not allege such entities operate in this District.

     *2:18-cv-497 Case:*  Citing Paragraph 84 of its Complaint, Uniloc alleges that the supposedly infringing video encoding at issue is performed by EDTX YouTube users.  But paragraph 84 provides that "***YouTube supports streaming of videos <u>to</u> end-user devices*** such as desktops, smartphones, TVs, etc. using multi-bitrate video streams in different formats including H.264."  Compl. ¶ 84.  In other words, Uniloc's allegations demonstrate that the patent claims concern video transmission, not reception,

---

[13] Complaint paragraph 13 refers to "Dallas-Fort Worth area channels," but does not allege that these channels upload video to YouTube from the District, let alone that they use VP9 to do so.

[14] For purposes of this motion, Google does not dispute Uniloc's characterization of the accused Spectrum Access System ("SAS") product as a product that coordinates access to spectrum among various users.

and reception is the only activity taking place in the District.[15]  Uniloc further argues that "coded data" may be received from a user in District who uploaded encoded video, thus implicating those users in the alleged infringing conduct.  But the asserted Claims 1 and 3 relate to a method and a system for modifying *already existing* "coded data."  Mot. Ex S, '934 Patent (claims 1 and 3).  Thus, the source of that "coded data" is irrelevant to infringement.  Even if the claimed "coded data" did originate with a user in the District, that user's device does not perform the claimed encoding method that operates on the coded data (claim 1), nor is the claimed encoding system that operates on the coded data located in the District (claim 3).  Uniloc's arguments concerning GGCs and alleged activity of local news channels are addressed above.

*2:18-cv-500 Case:*  Uniloc argues that users, including "NBC affiliate KETK, which serves the Tyler and Longview markets," (Opp. at 29), perform the claimed encoding methods.  But Uniloc's Complaint does not allege that KETK uses Google Cloud Media & Entertainment Solution's encoding, and the allegation that NBCUniversal is a client of Google Cloud Media & Entertainment Services does nothing to establish affiliate KETK's use of that service.  Similarly, while the Complaint alleges that use of H.264 allegedly infringes (Compl. ¶ 83), neither the Complaint nor Uniloc's Opposition identify any customer in the District using H.264 encoding techniques provided by Google Cloud Media & Entertainment.  Finally, Uniloc argues the Complaint alleges infringement by YouTube, but the Complaint states only that "Google Cloud platform is a suite of cloud computing services that runs on the same infrastructure that Google uses internally for its end-user products, such as Google Search and YouTube." Compl. ¶ 83.  Nowhere does Uniloc allege that YouTube infringes, or that it infringes by using H.264 video encoding.  Uniloc's arguments concerning GGCs are addressed above.

*2:18-cv-503 Case:*  There is no dispute that the asserted claims require "a routing device," a

---

[15] Likewise, Uniloc's cite to Paragraph 85 and Google Cloud Media & Entertainment Solutions' ability to "support[] live streaming of video using multi-bitrate video streams in different formats including H.264" implicates video delivery by Google, not by a user, because users cannot send video using multi-bitrate video streams.

"first server," a "second server," and operations performed by such device or servers.  *See* Mot. at 28; Mot. Ex. T, '489 Patent (Claims 1, 9).  Uniloc does not—because it cannot—challenge that the accused Google Cloud Load Balancing (GCLB) servers and routers are located and operate outside this District.  Mot. at 28.  Instead, while the patent claims require traffic to be routed "from the routing device to a second server in response to detecting [an] invalid status message from the first server," Uniloc nonsensically argues that "[t]he so-called first server does not need to be a Google server and can instead be a client server (*e.g.*, in the EDTX) that the client has requested that Google 'health check' feature [sic] monitor for performance."  Opp. at 30.  But Uniloc did not plead that theory or supporting facts in its Complaint, and its attorneys' argument cannot ward off dismissal.  *See Burgess v. Cox*, 2015 WL 5578310, at *3 (E.D. Tex. July 30, 2015).  Moreover, while Uniloc's Opposition cites "Megaport" and "GGC" in support of its new theory, its own Complaint alleges only the "Google Cloud Platform" (GCP) and the associated GCLB service as the "Accused Infringing Devices."  Compl. ¶ 83.  As GCP/GCLB servers are indisputably located and operated outside of Texas, no plausible basis for acts of infringement in this District exists.

	***2:18-cv-504 Case:***  Lacking any argument that the servers accused of infringing Claim 1 of the '954 patent are located in this District, Uniloc alleges that Google induced infringement by users in this District and that the claims "recite an interaction of the server with user devices, which are indisputably in this district."  Opp. at 31.  But Uniloc cannot plausibly allege that users are direct infringers in this case.  Uniloc does not explain how a "user device" can meet the limitations of "a server," "a database," and a "memory accessible by the server and storing a customer notification program which, when executed by the server, performs steps."  *See* Mot. at 28-29 and Mot. Ex. S, '954 Patent.  That the program might cause the server to ***send*** a notification to a user device and ***resolve*** a request responsive to a reply from that user device does not make the user device an

infringing instrumentality because that device neither sends the notification nor resolves the request. Moreover, Uniloc's Complaint does not allege, let alone plausibly allege, that Google's users control the system as a whole and obtain a benefit from each and every element thereof that is required by law. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005). Uniloc has not alleged that users of Google's two-step verification system commit infringement in the District.

## III.    PRE-SUIT INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

As explained in Google's motion, Uniloc's claims for pre-suit indirect infringement should be dismissed because Uniloc alleged no facts as to the requisite pre-suit knowledge of Google's purported infringement. In response, Uniloc does not point to any allegation in its complaints that purportedly support such pre-suit knowledge. *See* Opp. at 25-26, 32. Instead, it relies solely on other complaints it previously filed and voluntarily dismissed. *Id.* But it did not mention the prior complaints in the current ones, let alone suggest they provided pre-suit notice. Instead, Uniloc's allegations tied notice to the service of the current complaints, not prior ones: "Google will have been on notice ... since, at the latest, ***the service of this complaint***." *See, e.g.,* -495 Compl., ¶ 95.

Further, Uniloc cites no authority for the proposition that a prior unserved complaint that was voluntarily dismissed can provide pre-suit notice. Indeed, the proposition cannot be squared with settled law on the effect of a voluntary dismissal. "The rule in the federal courts is that the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to ***render the proceedings a nullity*** and leave the parties ***as if the action had never been brought***." *Bonneville Assocs. v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999); *see also Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) ("effect of a Rule 41(a)(1) dismissal is to put the plaintiff in a legal position as if he had never brought the first suit"). Prior lawsuits cannot cure Uniloc's failure to allege facts supporting the notice requirement.

Dated: June 4, 2019

Respectfully submitted by:

*/s/ Krista S. Schwartz, with permission by*
*Michael E. Jones*
Krista S. Schwartz
ksschwartz@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104
Tel: (415) 626-3939
Fax: (415) 875-5700

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3940
Fax: (650) 739-3900

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Defendants Google LLC**
**2:18-cv-491**
**2:18-cv-492**
**2:18-cv-497**
**2:18-cv-501**
**2:18-cv-499**
**2:18-cv-500**


*/s/ Ryan McBrayer, with permission by*
*Michael E. Jones*
Ryan McBrayer
RMcBrayer@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
206-359-3073
Fax: 206-359-4073

-17-

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846


**Attorneys for Defendants Google LLC
2:18-cv-493**


*/s/ Michael E. Berta, with permission
by Michael E. Jones*
Michael A. Berta
(California Bar No. 194650
Michael.berta@arnoldporter.com
Arnold & Porter
10th Floor
Three Embarcadero Center
San Francisco, CA 94111-4024
Tel: 415-471-3100
Fax: 415-471-3400

David Caine (California Bar No. 218074)
David.Caine@arnoldporter.com
Telephone: (650) 319-4710
Bonnie Phan (California Bar No. 305574)
Bonnie.Phan@arnoldporter.com
Telephone: (650) 319-4543
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807

Nicholas Lee (California Bar No. 259588)
Nicholas.Lee@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4156

Nicholas Nyemah (DC Bar No. 1005926)
Nicholas.Nyemah@arnoldporter.com
Telephone: (202) 942-6681
Paul Margulies (DC Bar No. 1000297)
Paul.Margulies@arnoldporter.com
Telephone: (202) 942-6990
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Mark Samartino (Illinois No. 6313889)
Mark.Samartino@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602-4321
Telephone: (312) 583-2437

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Defendant Google LLC**
**2:18-cv-494**
**2:18-cv-496**
**2:18-cv-498**
**2:18-cv-503**
**2:18-cv-504**


/s/ *Joseph Drayton, with permission*
*by Michael E. Jones*
Joseph Drayton
NY Bar No. 2875318
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Tel:  212-479-6275
Fax:  212-479-6275
Email:  jdrayton@cooley.com

-19-

Priya B. Viswanath
CA Bar No. 238089
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Tel:  650-843-5000
Fax:  650-849-7400
Email:  pviswanath@cooley.com

Rose S. Whelan
DC Bar No. 999367
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington DC  20004-2400
Tel:  202-842-7800
Fax:  202-842-7899
Email:  rwhelan@cooley.com

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Defendants Google LLC**
**2:18-cv-495**
**2:18-cv-502**