# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **UNILOC 2017 LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Case No. 2:18-cv-491 |
| | § | |
| **GOOGLE LLC,** | § | **REDACTED** |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT GOOGLE LLC'S RENEWED MOTION TO DISMISS FOR LACK OF STANDING AND IMPROPER VENUE

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    STATEMENT OF ISSUES TO BE DECIDED (L.R. CV-7(A)(1)) ................................... 3

III.   FACTUAL BACKGROUND ............................................................................... 3

       A.     The Parties .................................................................................. 3

       B.     Google's Motion to Dismiss ........................................................... 4

IV.    UNILOC LACKS STANDING TO SUE ................................................................. 4

       A.     Uniloc 2017 Lacks the Exclusionary Rights Required for Standing ...................... 4

       B.     Uniloc 2017 Does Not Hold All Substantial Rights in the Patents-in-Suit ............ 11

V.     VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS. ........................ 14

       A.     Google Has No "Regular and Established Place of Business" Here. ..................... 15

              1.     GGC Servers Hosted by Third-Party ISPs Are Not a "Regular and Established Place of Business" in this District. .......................... 15

                     a.     GGC Servers Are Not Places of Business and None Are Still Operating in This District. ............................................. 16

                     b.     GGC Servers Are Not "Physical Places" of Business. .................. 17

                     c.     GGC Servers Are Not "Regular and Established." ...................... 19

                     d.     The ISP Facilities Are Not a "Place *of*" *Google*. ........................... 20

              2.     Uniloc's Remaining Venue Allegations Fare No Better in Locating a "Regular and Established Place of Business" in This District. ................... 22

                     a.     Google Fi and Google Voice ............................................. 22

                     b.     Third-Party "Megaport" Facilities and GCI ............................. 23

                     c.     Repair Centers ........................................................... 24

                     d.     Other Google Services ................................................... 25

      e.      Operations Outside the District and Pre-Suit................................. 25

   B.     Uniloc Cannot Establish a Nexus Between Alleged Acts of Infringement and Google's Purported "Regular and Established Place of Business."................ 26

   C.     Uniloc Insufficiently Alleged an Act of Infringement in This District. ................ 28

VI.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ................................................................... 29

CONCLUSION............................................................................................................... 29

# TABLE OF AUTHORITIES

Page

CASES

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
No. CV 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017)............................................8

*AGIS Software Dev., LLC v. ZTE Corp.*,
No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) .............................25

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
604 F.3d 1354 (Fed. Cir. 2010).............................................................................................12

*Bakalis v. Bakalis*,
88 N.Y.S.3d 899 (N.Y. App. Div. 2018) .................................................................................10

*Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*,
910 F. Supp. 2d 629 (S.D.N.Y. 2012).......................................................................................10

*BMC Software, Inc. v. Cherwell Software, LLC*,
No. 1:17-cv-1074 (E.D. Va. Dec. 21, 2017) ...................................................................2, 16, 17

*Cafferty v. Scotti Bros. Records, Inc.*,
969 F. Supp. 193 (S.D.N.Y. 1997)...........................................................................................8

*CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*,
No. 13-CV-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018)....................................19

*CUPP Cybersecurity LLC v. Symantec Corp.*,
C.A. No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019)............2, 16, 17, 18

*Enviro Noise Control Corp. v. Stealth Acoustical & Emission Control Corp.*,
No. 07-CV-02555-EWN-KLM, 2008 WL 11363360 (D. Colo. July 9, 2008).........................13

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
630 F. Supp. 2d 365 (D. Del. 2007).........................................................................................13

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 2:17-CV-00676-RWS-RSP, 2018 WL 5728524 (E.D. Tex. Aug. 29, 2018)......................26

*HomeBingo Network, Inc. v. Chayevsky*,
428 F. Supp. 2d 1232 (S.D. Ala. 2006)....................................................................................18

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)........................................................................... passim

*In re Google LLC*,
914 F.3d 1377 (Fed. Cir. 2019) (Reyna, J., dissenting from denial of petition for
rehearing en banc)..............................................................................................27

*In re Google LLC*,
No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018)....................................16

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)................................................................................29

*In re Provider Meds*,
L.L.C., 907 F.3d 845 (5th Cir. 2018)...........................................................................8

*In re Taddeo*,
685 F.2d 24 (2d Cir. 1982).......................................................................................10

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018).........................................................................15, 28

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
323 F. Supp. 261 (N.D. W. Va. 1971) .......................................................................26

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019).........................................................................11, 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................................4

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016)...............................................................................8, 9

*Magee v. Coca-Cola Refreshments USA, Inc.*,
833 F.3d 530 (5th Cir. 2016) ...................................................................................18

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
906 F.2d 884 (2d Cir. 1990).....................................................................................11

*Moran v. Smith*,
No. 5:15-cv-1121-DAE, 2016 WL 4033268 (W.D. Tex. July 27, 2016) ...................29

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) ....................................................................1, 2, 4, 13

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
No. 17-CV-1725 (JPO), 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018) ..............................18, 20

*Personal Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) ........................................................... passim

*Prima Tek II, LLC v. A-Roo Co.*,
222 F.3d 1372 (Fed. Cir. 2000) ....................................................................7

*Propat Int'l Corp. v. Rpost, Inc.*,
473 F.3d 1187 (Fed. Cir. 2007) ....................................................................14

*Regents of Univ. of Minn. v. Gilead Scis., Inc.*,
299 F. Supp. 3d 1034 (D. Minn. 2017) ..........................................................19

*Rush v. Savchuk*,
444 U.S. 320 (1980) ....................................................................24

*Scaramucci v. FMC Corp.*,
258 F. Supp. 598 (W.D. Okla. 1966) ..........................................................26

*SEVEN Networks, LLC v. Google LLC*,
315 F. Supp. 3d 933 (E.D. Tex. 2017) ........................................................... passim

*Super Interconnect Technologies LLC v. Google LLC*,
No. 2:18-CV-00463-JRG, 2019 WL 3717683 (E.D. Tex. Aug 7, 2019) ........................2, 15, 17

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
137 S. Ct. 1514 (2017) ....................................................................2, 15, 27

*WiAV Solutions LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) ....................................................................5, 8, 9

*Wittman v. Personhuballah*,
136 S. Ct. 1732 (2016) ....................................................................4

**STATUTES**

28 U.S.C. § 1400(b) .................................................................... passim

28 U.S.C. § 1404(a) ....................................................................29

28 U.S.C. § 1406(a) ........................................................................................29

28 U.S.C. § 1694 ...........................................................................................18

35 U.S.C. § 271 .............................................................................................28

35 U.S.C. § 281 ..........................................................................................1, 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ...................................................1, 3

Federal Rule of Civil Procedure 12(b)(3) ...................................................1, 3

Federal Rules of Civil Procedure 12(b)(6)..................................................1, 3

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(3), and (b)(6), Defendant Google LLC ("Google") is moving to dismiss complaints filed by Uniloc 2017 LLC ("Uniloc 2017") on November 17, 2018 (the "November Complaints")[1] for lack of standing and improper venue.

*First*, Uniloc 2017 lacks Article III standing because ███████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████. *See Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1338 (Fed. Cir. 2007) (holding that a plaintiff for patent infringement lacks standing if it does not have the right to exclude the defendant from practicing the patents). Uniloc 2017 acquired the patents-in-suit ██████████████████████████. Further, Uniloc 2017 lacks standing under 35 U.S.C. § 281, because Uniloc 2017 does not have "all substantial rights" in order to sue. ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

The division of patent rights here goes far beyond the typical case. ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████



---

[1] The parties conducted discovery on standing and venue issues after initially briefing the issues addressed in this motion. The facts relating to each of the main bases of this motion, lack of standing and improper venue, are sufficiently similar that an identical motion is being filed across Uniloc's cases filed in late December 2018 (the 548-554 cases). Google is filing motions addressed to different factual circumstances in Uniloc's cases filed in November 2018 (the 491-504 cases), with the only substantive variation among the motions in the November 2018 cases being particular arguments as to Uniloc's failure to allege acts infringement in the District in the 491, 492, 495, 497, 500, 503, and 504 cases.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ This is exactly the kind of scheme that *Morrow* suggests could deprive all entities of standing.

*Second*, Google respectfully submits that venue is not proper in this district. Under *TC Heartland*, venue in a patent case is only proper (1) where the defendant resides, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement. Google has never resided in this District. Nor does Google have any place of "business" in this District, much less one that qualifies as "regular and established" under the standards set forth in *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Uniloc alleges that the presence in the District of several Google Global Cache edge servers ("GGC servers") is sufficient to establish that venue in this District is proper. The GGC servers sat in racks in third-party facilities and only received requests and relayed static content; they are not offices, nor does Google have any offices or Google employees at offices in the District. As a result, under *Cray*, the presence of the GGC servers is not sufficient to make venue proper. *See CUPP Cybersecurity LLC v. Symantec Corp.*, C.A. No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019); *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017); Declaration of Douglas L. Clark, Ex. A (*BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-1074, Dkt. 55 (E.D. Va. Dec. 21, 2017)).[2]

Google recognizes that the Court has determined that the presence of GGC servers serving content to users was sufficient to establish venue. *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2017); *Super Interconnect Technologies LLC v. Google LLC*,

---

[2] All exhibits are attached to the concurrently-filed Clark Declaration unless otherwise noted.

No. 2:18-CV-00463-JRG, 2019 WL 3717683, at *2 (E.D. Tex. Aug 7, 2019). Google respectfully submits that the Court's previous rulings are inconsistent with the Federal Circuit's guidance in *Cray* and with the majority rule that has developed following the decision in that case.

Finally, Uniloc 2017's other venue allegations are even more attenuated: references to remotely administered Google services; relationships with third-parties in the District; scattered equipment that may be in the District; and contacts outside the District and relevant time period. Nothing in Uniloc 2017's allegations satisfies the Federal Circuit's standard in *Cray*.

## II.     STATEMENT OF ISSUES TO BE DECIDED (L.R. CV-7(A)(1))

1.     Should this case be dismissed under Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) because the plaintiff lacks standing to sue?

2.     Should this case be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue over Google in this District?

## III.    FACTUAL BACKGROUND

### A.     The Parties

While Google's products and services are accessible across the United States, it neither resides nor has a place of business in the Eastern District of Texas. Google is an LLC organized in Delaware. Ex. B, ¶ 5. Its headquarters and principal place of business is in the Northern District of California. *Id.* ¶ 4. Google does not own or lease "any office space, retail space, or other real property in the Eastern District of Texas." Ex. C, ¶ 3. Google has neither offices nor employees at offices in this District. Ex. B, ¶ 8. Nor does Google possess or control any other physical place of business in this District, including where GGC servers have been located, or hold itself out as doing so.

Uniloc 2017 LLC is a Delaware limited liability company. 2:18-cv-00491 Compl. ¶ 1. Various permutations of Uniloc entities (including Uniloc 2017, Uniloc USA, and Uniloc

Licensing USA LLC) have sued telecommunications and mobile device companies for patent infringement across the country, and have previously filed and dismissed several other complaints against Google in this District. Meanwhile, ███████████████████████████████

███████████████████████████████████████████████

## B.       Google's Motion to Dismiss

This Motion concerns 13 actions Uniloc filed on November 17, 2018, alleging that YouTube and Google's Hangouts, Meet, devices, and Spectrum Access System infringe various. *See, e.g.*, 2:18-cv-00491 Compl. ¶ 83; 2:18-cv-00492 Compl. ¶ 83; 2:18-cv-00493 Compl. ¶ 83; 2:18-cv-00494 Compl. ¶ 83; 2:18-cv-00495 Compl. ¶ 83. The complaints assert the same venue allegations, regardless of the patent or technology accused.

In April 2019, Google filed motions to dismiss for lack of standing and improper venue. The Court subsequently entered a scheduling order to govern additional discovery and briefing on the issues raised in Google's motion. A modified scheduling order followed, setting forth deadlines by which Google would file a new or amended motion to dismiss based on Uniloc's standing and improper venue. This is the contemplated renewed motion.

## IV.    UNILOC LACKS STANDING TO SUE

### A.       Uniloc 2017 Lacks the Exclusionary Rights Required for Standing

The plaintiff bears the burden of establishing that it has Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "A party has standing only if he shows that he has suffered an 'injury in fact' . . . ." *Wittman v. Personhuballah,* 136 S. Ct. 1732, 1736 (2016) ("The need to satisfy [this] requirement[] persists throughout the life of the lawsuit.") (citations omitted). Article III standing requires that a plaintiff have suffered an injury-in-fact from a violation of its exclusionary rights in the patent. *Morrow*, 499 F.3d at 1340–41 (Fed. Cir. 2007).

Article III standing in a patent case requires that the plaintiff have the "exclusive" right to

control the use of the patents-in-suit. If a third party has the right to license the defendant's allegedly infringing activities, the plaintiff lacks the requisite exclusionary rights. *See WiAV Solutions LLC v. Motorola, Inc.,* 631 F.3d 1257, 1266 (Fed. Cir. 2010). In such a case, the plaintiff suffers no injury-in-fact from the defendant's acts the plaintiff lacks the right to exclude the defendants from using the patents in the first place. Such is the situation here: Uniloc 2017 lacks exclusionary rights in the patents-in-suit because



---

[3] Notably, Uniloc 2017's 30(b)(6) witness testified █████████████████████████ ████████████████████████████████████ Ex. P, 139:15-141:1; Ex. V, 8-9.



*See*

*Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) (explaining that "an owner

or licensee of a patent cannot convey that which it does not possess").

---

[4] *See* Doak Decl. ████████████████████████████████████████
████████████████ By that date, at least one Uniloc patent had already been ruled invalid in
part, and at least two other patents were subject to pending invalidity challenges. Ex. J; Ex. K.



*See, e.g.*, *In re Provider Meds*, L.L.C., 907 F.3d 845, 856 (5th Cir. 2018) (explaining that the term "irrevocable . . . indicates that the license may not be revoked for any reason");*Cafferty v. Scotti Bros. Records*, Inc., 969 F. Supp. 193, 198–199 (S.D.N.Y. 1997) (holding under New York law that an "irrevocabl[e]" license survived the occurrence of events that a subsequent agreement stated would terminate the license).

████████████████████████████████████████████████████Uniloc 2017 lacks the absolute right to exclude Google from practicing the patents-in-suit. Without that right, Uniloc 2017 lacks constitutional standing to sue. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1348 (Fed. Cir. 2016) ("If [the patentee] could . . . license any entity . . . [the licensee] would not have had exclusionary rights to the asserted patents."); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2017 WL 3668597, at *3 (D. Del. Aug. 24, 2017) (third party's ability to license accused infringers deprived plaintiff of standing).

██ ████████████████████

In analyzing whether a third party's licensing rights defeat standing, the dispositive issue is whether the right extends to licensing the accused infringer. *Luminara*, 814 F.3d at 1348; *WiAV*, 631 F.3d at 1267. Although the court found standing in *Luminara* and *WiAV*, it did so because the

licenses at issue allowed the third party to sublicense only to "affiliate[s]," and the accused infringer did not so qualify. *Luminara*, 814 F.3d at 1349; *WiAV*, 631 F.3d at 1262-63. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See WiAV*, 631 F.3d at

1266 ("[A]n exclusive licensee lacks standing to sue a party who has the *ability* to obtain such a license from another party with the right to grant it." (emphasis added)).

██   ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

Nor is there any evidence that ████████████████████████████████████

██████████████████████████████████████████████████ undefined terms

are given their plain meaning. *Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO

II, Ltd.,* 910 F. Supp. 2d 629, 648-49 (S.D.N.Y. 2012);  *In re Taddeo,* 685 F.2d 24, 26-27 (2d Cir.

1982); *see also Bank of New York Mellon,* 910 F. Supp. 2d at 649 ("Curing a default commonly

means taking care of the triggering event and returning to pre-default conditions.").

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████ *Bank

of New York Mellon,* 910 F. Supp. 2d at 649 ("waiver" and "cure" presumed to differ). █████████

█████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Bakalis v. Bakalis,* 88 N.Y.S.3d 899, 900 (N.Y. App. Div.

2018) ("[T]he defendant . . . cured his default in payment . . . by making the required payment . . .

on the cure date fixed by the plaintiff."). ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ *Metro. Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 890 (2d Cir.

1990) (court cannot modify the "right to cure that was bargained for"). ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

In response to Google's previous motion to dismiss, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

**B.**     **Uniloc 2017 Does Not Hold All Substantial Rights in the Patents-in-Suit**

Uniloc 2017 also lacks standing under 35 U.S.C. § 281, which requires that a plaintiff hold

"all substantial rights" to the patents-in-suit. See *Lone Star Silicon Innovations LLC v. Nanya Tech.*

*Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019). After acquiring the patents-in-suit, Uniloc 2017

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

This is another ground for dismissal.

██   ████████████████████████████████████

Upon acquiring the patents-in-suit, Uniloc 2017 immediately   ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

████████████████████████████████

████████████████████████   The right to sue is "frequently" considered "the most important consideration" in the standing analysis. *Alfred E. Mann Found. For Sci. Research v. Cochlear*

*Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010). As the Federal Circuit warned in *Morrow*, "[w]hile parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements." 499 F.3d at 1341 n.8. Several district courts have applied *Morrow* in holding that when an entity with exclusionary rights in a patent relinquishes its right to sue, it lacks standing. In *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, for example, the patent owner (Intersil) had granted a licensee (Fairchild) "the sole and exclusive right" to sue the accused infringer (Power Integrations) on the patents-in-suit. 630 F. Supp. 2d 365, 371 (D. Del. 2007). The court held that the patent owner had contracted away its right to sue and lacked standing:

> As for Intersil, the Court likewise concludes that Intersil lacks standing to maintain this action against Power Integrations. Intersil contracted away its right to sue Power Integrations to Fairchild. That Fairchild lacks standing to take advantage of that right does not mean that Intersil regains it. Indeed, the Federal Circuit recognized in *Morrow* . . . that the contractual division of patent rights may have the effect of defeating standing as to all relevant parties.

*Id.* at 372, 73. The court further concluded that, because the patent owner had no right to sue and the licensee had no Article III standing, the patent owner could not be added in order to cure the standing problem—and dismissed the action. *Id.* at 373. The reasoning in *Fairchild* applies here.

███████████████████████████████████████████████████████████

███████████████████████████████. *See Fairchild*, 630 F. Supp. 2d at 373. ████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████

The court in *Enviro Noise Control Corp. v. Stealth Acoustical & Emission Control Corp.* reached a similar conclusion on similar facts. No. 07-CV-02555-EWN-KLM, 2008 WL 11363360 (D. Colo. July 9, 2008). There, the licensee possessed exclusionary rights in the patents-in-suit, but the patent owner possessed the exclusive right to sue and recover damages. *Id.* at *7. The court

concluded that the licensee had "no mechanism" to enforce its exclusionary rights and lacked

standing. *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮  ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮

Around the same time that Uniloc 2017 ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *See Propat Int'l*

*Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an

important incident of ownership, and . . . a restriction on that right is a strong indicator that the

[patent holder] does not [have] all substantial rights under the patent.").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *See Lone Star*, 925 F.3d at 1233. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## V.    VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS.

In a patent case, venue is proper only "in the judicial district where the defendant resides,

or where the defendant has committed acts of infringement and has a regular and established place

of business." 28 U.S.C. § 1400(b). "[T]he Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). Uniloc 2017 acknowledges that Google is organized in Delaware with a principal place of business in Mountain View, California. 2:18-cv-00491 Compl. ¶ 4. Therefore, under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017), Google does not reside in this District for purposes of the patent venue statute. Moreover, as explained below, Uniloc 2017 cannot meet its burden to establish venue is proper under the "regular and established place of business" prong of the statute.

**A.    Google Has No "Regular and Established Place of Business" Here.**

In *Cray,* the Federal Circuit explained that for a defendant to have a regular and established place of business in a district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d at 1360. All three requirements must be met to establish venue. *Id.* at 1362-63. None of Uniloc 2017's venue allegations meet these three requirements.

**1.    GGC Servers Hosted by Third-Party ISPs Are Not a "Regular and Established Place of Business" in this District.**

Google acknowledges that the Court is not writing on a blank slate when it comes to GGC servers, which form the backbone of Uniloc 2017's venue allegations. Compl. ¶¶ 20-34.[5] In *Personal Audio*, Judge Clark held that Google's GGC servers serving content to users did not create a "regular and established place of business" under *Cray*. 280 F. Supp. 3d at 925, 932-35. The *SEVEN* decision acknowledges that it contradicts *Personal Audio* on the same basic facts. 315 F. Supp. 3d at 950.[6]   And after a divided Federal Circuit panel declined mandamus review of

---

[5] Unless otherwise indicated, citations to Compl. in this brief refer to case 2:18-cv-00491.
[6] This Court recently concluded that *Super Interconnect*, was "on all fours with the facts in *SEVEN*," and therefore applied *SEVEN*'s holding. 2019 WL 3717683, at *2  Google respectfully disagrees with that holding for the same reasons it disagrees with the holding in *SEVEN*.

*SEVEN*, finding it "appropriate to allow the issue to percolate in the district courts," *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018), Chief Judge Lynn in the Northern District has since agreed with *Personal Audio* that servers at a third-party's data center are not a "regular and established place of business." *CUPP*, 2019 WL 1070869, at *2-3; *see also* Ex. A, *BMC*, No. 1:17-cv-1074, Dkt. 55 at 5-6 (E.D. Va. Dec. 21, 2017) ("rent[ing] a server rack from a third party" does not establish a "place of the defendant"). Google respectfully submits that the majority position is the correct one.

### a. GGC Servers Are Not Places of Business and None Are Still Operating in This District.

GGC servers are just one part of a tiered network of computer infrastructure that allows Google to quickly and reliably deliver content. The core of this network is Google's data centers, which provide computation and backend storage. Ex. W, ¶ 3. There are a handful of Google data centers in the U.S.—none in Texas. *Id.* The next tier of Google's network infrastructure is known as "Edge Points of Presence" ("PoPs"), which connect Google's network to the rest of the Internet. *Id.* ¶ 4. Google has no PoPs in this District. *Id.*

The last tier of the network consists of the GGC servers or "edge nodes." *Id.* ¶ 5. Local Internet Service Providers ("ISPs") host GGC servers at the ISPs' own facilities. *Id.* ¶ 6. If an ISP chooses to host a GGC server, portions of certain digital content that is popular with the ISP's subscribers can be temporarily "cached" on that GGC server, relieving the ISP of the need to use medium or long-haul network capacity to fetch the content from outside its network. *Id.* GGC servers are not necessary for the delivery of Google content to users. *Id.* at ¶ 5.

GGC servers are not computers made by Google; rather, they are off-the-shelf computers made by third-party manufacturers and typically shipped directly to ISPs by third parties. *Id.* ¶ 9. After receiving the GGC servers, the ISP unpacks, locates, installs, and hosts them in its own

facility. *Id.* Google does not own, lease, or control the space where the servers are kept. *Id.* ¶ 10. No Google employee has ever seen or visited the servers in this District. *Id.* Indeed, Google does not have rights to physically access the spaces in which the GGC servers are stored while its service agreements with the ISPs are in force. *Id.* ¶ 12. And those service agreements may be terminated "at any time" for the convenience of either party. *Id.*

In fact, the GGC servers that were located in this District were drained on November 23, 2018—just six days after Uniloc 2017 filed the November Complaints—and ceased serving content to users. *Id.* ¶ 13.[7] The servers that were used in this District represented only a fraction of one percent of Google's total serving capacity in the United States. *Id.* ¶ 7. The absence of GGC servers serving content to users in this District did not cause any disruption to the delivery of content to users. *Id.* ¶ 13; Ex. BB. Notwithstanding *SEVEN*'s contrary conclusion, GGC servers cannot meet any of the *Cray* requirements, let alone all of them.

### b. GGC Servers Are Not "Physical Places" of Business.

Apart from *SEVEN* and *Super Interconnect*, every decision to address servers has held that they do not constitute a physical place of business under *Cray*. GGC servers are "'hardware,' the physical electronic equipment used to operate the internet," as opposed to "'places' under the meaning of the statute," and "therefore cannot establish a regular and established place of business in this district." *Personal Audio*, 280 F. Supp. 3d at 934. To the extent the servers provide 'space' from which a business may operate, any such space would be virtual space and virtual space explicitly fails the *Cray* test." Ex. A, *BMC* at 4; *see also CUPP*, 2019 WL 1070869, at *3. The

---

[7] During discovery, Uniloc 2017 focused on ████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████ *See* Ex. X, 73:21-74:16; Ex. AA.                                                      Ex.
Y; Ex. Z, ¶ 2.

"business conducted" by servers "involves electronic communications, which the Federal Circuit specifically stated cannot constitute a place." *CUPP*, 2019 WL 1070869, at *3.

The facts here bear out these general principles. Google and ISPs enter Service Agreements, not leases, for the maintenance of GGC servers at facilities the ISPs own. Ex. W, ¶¶ 10, 12. In these Service Agreements, ISPs agree to provide rack space, power, network interfaces, and IP addresses for the servers, as well as remote assistance and installation services. *Id*. ¶ 12. The agreements therefore concern the provision of services by the ISPs, not real estate, and they do not give Google any control over physical space. Indeed, the agreements expressly put the ISPs in control of physical access to the equipment. *Id*. The only time at which the agreements authorize Google employees to enter the ISPs' premises is if the agreements are terminated. *Id*.

Even if the GGC servers could be said to take up some amount of physical space, they are not "places of business" under *Cray*. Servers are pieces of equipment—like slot machines or vending machines—not places where employees conduct business—such as an office, storefront or factory. *See HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016).[8] "The servers themselves are not places from which [Google] conducts its business." *CUPP*, 2019 WL 1070869, at *3. That is particularly true given that the servers simply cache and transfer electronic data. *See* Ex. W, ¶ 6. The venue statute "cannot be read to refer merely to a virtual space or to electronic communications from one person to another." *Cray*, 871 F.3d at 1362.[9]

---

[8] The requirement that business must be carried out by employees or agents of the defendant present at the place of business is confirmed by the patent service statute, which "presumes that a defendant with a 'place of business' in a district will also have 'agents conducting such business' in that district." *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *4 (S.D.N.Y. Mar. 26, 2018) (quoting 28 U.S.C. § 1694).
[9] *SEVEN* concluded that control exercised by Google established that the physical presence of GGC servers were more than "merely" a virtual space or electronic communications. 315 F.

The *SEVEN* decision likened Google's GGC servers to warehouses. 315 F. Supp. 3d at 948. But unlike GGC servers, a warehouse is real property staffed by employees of the business. With respect for the Court's prior decision, Google submits a closer (though by no means perfect) analogy for a GGC server, which temporarily "caches" popular content for users, is a storage locker. But courts have found storage lockers do not qualify as places of business. *See Regents of Univ. of Minn. v. Gilead Scis., Inc.*, 299 F. Supp. 3d 1034, 1043 (D. Minn. 2017); *CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018). Moreover, servers, unlike warehouses and storage lockers, do not store physical objects; they share electronic data, precisely what *Cray* held was insufficient under § 1400(b).[10] GGC servers are neither physical places nor places of business under *Cray*.

### c.   GGC Servers Are Not "Regular and Established."

Even if GGC servers located on third-party ISPs' server racks could meet *Cray*'s first requirement of a "physical place of business," that place of business must be "regular and established." *Cray*, 871 F.3d at 1360. A regularly operating business means one that "operates in a steady, uniform, orderly, and methodical manner," while an "established" place means "settled certainly, or fixed permanently." *Id.* at 1362-63. But here, GGC servers simply store or "cache"

---

Supp. 3d at 951. Google respectfully submits that the level of control discussed in *SEVEN* is not borne out by the Service Agreements and that, in any event, a server fundamentally facilitates electronic communications in connection with a virtual space. While electronic communications and virtual spaces necessarily require physical hardware, that does not make physical hardware "physical places of business." *Id.* at 950. Moreover, the fact remains that Google has no access to the physical space where the servers are stored. Ex. W, ¶ 12.

[10] Nor does the fact that Congress made clear that ATMs are not regular and established places of business demonstrate that servers are. *Cf. SEVEN*, 315 F. Supp. 3d at 962-64. Rather, Congress addressed the question presented to it by industry lobbyists seeking clarity as to particular pieces of machinery. In any event, a bank's branded ATM, which requires leasing or owning specific real property to serve customers visiting that physical location is a far cry from an anonymous server in an ISP's data center that is only accessed remotely via electronic communications.

popular digital content on a temporary basis, and cannot operate independently of a Google data center located outside the District. Ex. W, ¶¶ 5-6. Google content may move through GGC servers, but Google does not "regularly" conduct business from server racks in third-party facilities. *See Peerless*, 2018 WL 1478047, at *3-4 (finding "equipment … involved in processing calls" stored on a shelf at a third-party facility was not a "regular and established place of business").

Nor are the GGC servers "established" within *Cray*'s meaning. The ISPs are contractually authorized to move the GGC servers to different locations with Google's consent, which highlights the impermanent nature of the GGC servers' placement. Ex. W, ¶ 11. Moreover, the contract can be terminated "at any time" for the convenience of either party. *Id.* ¶ 12. In fact, the handful of GGC servers that were previously active in this District ceased serving content to users shortly after Uniloc filed the November Complaints. The fact that personal property designed to temporarily hold electronic data is stored on the shelf of a third party under an agreement that can be terminated by either party at will is insufficient to establish that Google has a "permanently fixed" "place" in this District. *Cray*, 871 F.3d at 1363.

### d.    The ISP Facilities Are Not a "Place *of*" Google.

To satisfy *Cray*'s third requirement—"that 'the regular and established place of business' must be 'the place of the defendant'"—the "defendant must establish or ratify the place of business" in question. *Cray*, 871 F.3d at 1363. "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id*. To begin, GGC servers are not places; they are things. ISPs install, store, and maintain them. Ex. W, ¶¶ 9, 12. No Google employee ever even saw the GGC servers in question. *Id*. ¶ 10. The servers were shipped by a third-party to the ISP, who set them up, determined where to place them, and then supplied power, network interfaces, and IP addresses to the servers. *Id*. ¶¶ 9, 12. Indeed, ███████████████████████████████████████████ underscores

that the ISPs, not Google, control the places where the servers are deployed. *See* Ex. X, 73:21-74:16; Ex. AA.

As for the only places possibly at issue in connection with the GGC servers—the real estate where they sat—Google neither owns nor leases the ISP facilities. The ISPs agree to "provide" "rack space" for the equipment, which is located **"*in the Host's*"** facilities—physical property locations owned or leased by the ISP. Ex. W, ¶ 12 (emphasis added). For an ISP merely to provide rack space for equipment—at a place of the ISP's choosing—does not give Google a "lease" or control over the space in which the servers sit. In fact, Google does not even have physical access to—much less control over—the rooms holding the racks and servers. The racks are in the host's facilities and Google does not have a key. *Id.* The contract only grants Google access if the agreement is terminated and the ISP fails to deliver the servers to Google. *Id.* Only then, may Google enter any premises housing such equipment during normal working hours. *Id.*

Other "[p]otentially relevant inquiries" in determining whether a location is a "place of business" of the defendant "include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Cray*, 871 F.3d at 1363-64. Google has done none of those things. There is no Google "sign" or other indication on any ISP's facility containing GGC servers in the District that the facility is a place of business of Google.[11] Finally, courts may consider "the nature and activity

---

[11] Both *SEVEN* and Uniloc's complaint point to Google Maps, noting ISPs deploy GGC servers in their networks in certain metro areas in this District, suggesting that this ratifies the ISP's location as Google's place of business. *See SEVEN*, 315 F. Supp. 3d at 966, n.51; Compl. ¶ 22. But as Google's website explains, GGC servers are deployed by third-party network operators and ISPs, not Google. *See* https://peering.google.com/#/infrastructure (compare with Google's language regarding Data Centers that Google "operates"). Rather than associating itself with a specific place of business, such as an ISP, this web page refers generally to the scope of its network infrastructure. In fact, the places identified on Google's website are not even the locations of the ISPs, but rather the airports closest to the servers.

of the alleged place of business . . . *in comparison with* that of other places of business of the defendant in other venues." *Cray*, 871 F.3d  at 1364 (emphasis in original). GGC servers are located in many judicial districts, while the GGC servers in this District constituted a fraction of one percent of the total serving capacity of Google's network in the U.S. and were drained without interruption to the delivery of content to users. Ex. W, ¶¶ 7, 13. In contrast, Google facilities, such as its offices and data centers, are found in far fewer locations, and none are in the District. *Id.* ¶ 3; Ex. C, ¶¶ 3-5. GGC servers are not a sufficient basis for venue under *Cray*.

### 2.    Uniloc's Remaining Venue Allegations Fare No Better in Locating a "Regular and Established Place of Business" in This District.

Uniloc attempts to supplement its GGC server allegations with a variety of Google services and relationships (including past relationships) that it claims establish a "regular and established place of business" in this District. None passes the *Cray* test.

### a.    Google Fi and Google Voice

Uniloc 2017 points to Google's "wireless phone services called Google Fi" that Google provides to its customers "for cities such as Tyler and Marshall, TX." Compl. at 10 (¶ 34). But Google Fi is a Mobile Virtual Network Operator ("MVNO"), a cellular service provider that contracts to resell services from a cellular carrier's network (AT&T, T-Mobile, Verizon or Sprint). Google Fi is not a "physical place" of business, such as "a building or a part of a building," but is instead a service provided to Google users. Google Fi relies on cellular towers of other companies to transmit data; Google does not own any cell towers in this District. [12] Ex. CC, ¶ 4; *see also* Ex. DD, §§ 1.22 ▆▆▆▆▆, 1.72 ▆▆▆▆▆▆▆▆▆▆ 2.1 ▆▆▆▆▆▆▆ 11.1

---

[12] Moreover, as *Personal Audio* recognized, holding that "every single AT&T tower" is "a place of business for AT&T" would "distort the scope of the statute." 280 F. Supp. 3d at 934. Regardless of the role Google plays in routing traffic through the towers and other equipment of carriers, that third-party property is not Google's regular and established place of business.

███████████; Ex. EE, §§ 1 ██████████████████████████████████████████ 2.4

███████████████████████████ Google has no exclusive rights to use the cell towers. Ex. CC, ¶¶

4-5. And Google has no say as to where the towers are located or how they are operated. *Id.* Thus,

the Google Fi service fails at each step of the *Cray* test. It consists of the transmission of "electronic

communications," not a "physical place" of business. *Cray*, 871 F.3d at 1362-63. Because Google

neither owns the cell towers, nor has any say over where they are located or how they are operated,

the towers cannot be a "regular and established" place of business for Google. *Id.*

As for Google Voice, Uniloc 2017 simply alleges that Google provides "telephone services

to residents in this District" through the service by allowing selection of local numbers. Compl. at

25 (¶ 64). This says nothing of a physical place of business, that is regular and established, and/or

ratified by Google. Providing digital telecommunications services to residents within a district,

such as internet or telephone services, from a place outside the district does not qualify as a regular

and established place of business. *See Cray*, 817 F.3d at 1362.

### b.     Third-Party "Megaport" Facilities and GCI

Uniloc 2017 points to another company, Megaport, facilitating the provision of two Google

Cloud platform services to users. Those services, Google Cloud Interconnect ("GCI") and Direct

Peering, allow direct or very fast access to the Google Cloud network and Google servers. Ex. FF,

¶¶ 3, 8. Uniloc 2017 alleges that "Google equipment at Megaport's facilities which provide the

GCI and Direct Peering Services" are "fixed geographical locations"; "regular and established"

because they operate in a "steady, uniform, orderly and methodical manner"; and "of the

defendant" because Google holds contractual and/or property rights to use the space and maintain

equipment. Compl. at 17 (¶ 48). The facts are otherwise.

First and foremost, Megaport is not Google—it is a different company. Second, there is

no "Google equipment at Megaport's facilities," as Uniloc 2017 asserts. Megaport acts as an

intermediary between Google and other companies using GCI and Direct Peering services. Ex. FF, ¶¶ 6, 8. Companies can run a fiber line directly into the facilities of intermediaries like Megaport. *Id.* The intermediary then transfers data between the company and Google PoPs, described above, that are located outside of this District. *Id.* ¶¶ 4-5. Google does not own any portion of Megaport or own or lease any of Megaport's facilities. *Id.* ¶ 9.[13]  Nor does Google provide any equipment to Megaport, or maintain or locate any of its equipment at Megaport to facilitate Megaport's connectivity capabilities. *Id.* Google has no presence in, or connection with Megaport that would establish a "regular and established" place of business of Google.[14]

### c.      Repair Centers

Uniloc 2017 alleges that Google Pixel phone owners can bring or mail broken devices to repair centers operated by uBreakiFix and Cynergy. Compl. at 18-20 (¶¶ 50-54). Google does not own an interest in or manage uBreakiFix or Cynergy, which are independent, third-party companies. As for Cynergy, Uniloc 2017 points to a facility in Grapevine, Texas (Compl. at 19-20 (¶ 54)), which is located in the Northern District. uBreakiFix does not exclusively repair Google products; it is a national repair service for many phone manufacturers, including Apple and Samsung. *See* https://www.ubreakifix.com/company/about. Google does not own or operate any repair facility in the District, nor do any Google employees perform the repairs carried out at such a facility.

The fact that Google directs device owners to another separate, independent business for repair services does not establish that repair center locations are Google's place of business. *Cf.*

---

[13] Megaport also does not own any facilities in the District, but rather has a relationship with another company— CyrusOne—that does. Ex. FF, ¶ 10. Google has no more connection to CyrusOne than to Megaport. *Id.* ¶ 11.

[14] Indeed, in the personal jurisdiction context, forum contacts of one company cannot be imputed to another. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980). If contacts of a third party do not suffice for personal jurisdiction, they *a fortiori* do not for venue. *See Cray*, 871 F.3d at 1361.

*Cray*, 871 F.3d at 1363 ("it must be [the] place of the defendant … not solely a place of the defendant's employee"); *AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023, at \*3–4 (E.D. Tex. Sept. 28, 2018) (contracting for support from a dedicated call center operated year-round by a separate entity insufficient to establish venue).

### d.      Other Google Services

Uniloc 2017 points to various nationwide services as evidence of venue in this District, including Google Maps functionality; G-Suite services and Google Software-as-a-Service applications available through Google Cloud; and Waze's collection of traffic data. Compl. at 20-21 (¶ 55), 23-25 (¶¶ 61-62, 63), 26 (¶ 65), and 29 (¶ 12). These allegations amount to Google offering online services and collecting data via applications used by consumers nationwide, including within the District, but that does not make an application a Google place of business. *See SEVEN*, 315 F. Supp. 3d at 951 n.26 (idea that "every handheld device sold by Verizon would become a place of business for Verizon" is "clearly … too far afield from the statutory text").

The same goes for Google Express. *See* Compl. at 21-23 (¶¶ 58-59). Google Express is a service that connects online users to popular retail stores to order the retailers' goods. Ex. GG, ¶ 4. Shoppers in this District can use Google Express, but Google has no employees, factories, warehouses, storage facilities or delivery fleets in the District to operate the service. *Id.* ¶ 5. Absent any physical property—real or personal—in the District, Google Express is not a regular and established place of business under Cray.

### e.      Operations Outside the District and Pre-Suit

Uniloc 2017 also includes allegations regarding Google's "Presence in the State," irrespective of district. Compl. at 27-29 (¶¶ 1-12). For example, Uniloc 2017 identifies Google Fiber services provided in Austin and San Antonio. *Id.* at 28 (¶ 8). Google has also provided the State of Texas with aerial imagery and has digitized collections of books from public libraries,

including at the University of Texas, Austin. *Id.* at 29 (¶¶ 10, 11). Again, there is no connection to this District and none that supports a "regular and established place of business" in this District.

Similarly, Uniloc 2017 points to office space and real estate that either are outside of this District or were closed by Google years before the complaints were filed. Uniloc 2017 points to land purchased in Midlothian, Texas, Google offices in Austin, Texas, and an investment in a wind farm project in Oldham County, Texas. *Id.* at 27-28 (¶¶ 2, 4-5, 9). But all of these properties are located outside the District. Activities outside the District have no bearing on whether Google should be subject to venue within the District. And while Uniloc 2017 alleges Google leased office space in Frisco, Texas from 2012 to 2013 (*Id.* at 23 (¶ 60)), "[c]ourts determine venue under § 1400(b) by the facts and situation as of the date the suit is filed." *Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 2:17-CV-00676-RWS-RSP, 2018 WL 5728524, at *2 (E.D. Tex. Aug. 29, 2018). The canceled office lease in this District years before the November Complaints is irrelevant.

Finally, Uniloc 2017 alleges that since 2007, Google has employed "hundreds" of employees in Texas. *See* Compl. at 27-28 (¶¶ 3, 6). This vague allegation, even if true, is insufficient to show that Google has a regular and established place of business within the Eastern District of Texas. And Uniloc 2017 does not present any evidence suggesting otherwise.

In sum, Google does not have any "place of business" this District, much less one that qualifies as "regular and established" under the standards the Federal Circuit set forth in *Cray*.

### B.    Uniloc Cannot Establish a Nexus Between Alleged Acts of Infringement and Google's Purported "Regular and Established Place of Business."

Beyond showing that a defendant has a regular and established place of business, courts have also required plaintiffs to identify a relationship between that place and the alleged acts of infringement. *See Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602 (W.D. Okla. 1966); *see also Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 266-67 (N.D. W. Va. 1971). While *SEVEN*

concluded otherwise, that requirement is consistent with statutory history of the patent venue statute, *see Cray*, 871 F.3d at 1361 (§ 1400(b)'s predecessor passed to ensure "[j]urisdiction would not be conferred by '[i]solated instances of infringement' but 'only where a permanent agency is established'"), but essential if the "regular and established place of business" prong is interpreted so broadly as to confer venue in any District a defendant's equipment is found or services used.

Uniloc's fusillade of complaints illustrates this perfectly. As shown in the chart below, of the 14 patents asserted and technologies accused in the November complaints, none is related to any more than two of Uniloc's questionable venue allegations, most are related only to the most questionable of those allegations (e.g., web-based services accessible in the District or third-party facilities), and half of the venue allegations are unrelated to *any* case:

| Patent | GGC Servers | Google Fi / Voice | Google Cloud / Peering | Repair centers | Google Maps | Google Express | Texas Real Estate | G-Suite Services | Services (imaging; books; Fiber) |
|---|---|---|---|---|---|---|---|---|---|
| 6,473,114 | NO | NO | NO | NO | NO | NO | NO | ? | NO |
| 6,952,450 | ? | NO | NO | NO | NO | NO | NO | NO | NO |
| 6,836,654 | NO | NO | NO | ? | NO | NO | NO | NO | NO |
| 6,285,892 | NO | NO | ? | NO | NO | NO | NO | NO | NO |
| 7,016,676 | NO | NO | NO | NO | NO | NO | NO | NO | NO |
| 6,349,154 | NO | NO | NO | ? | NO | NO | NO | NO | NO |
| 6,329,934 | ? | NO | ? | NO | NO | NO | NO | NO | NO |
| 6,980,522 | NO | NO | ? | NO | NO | NO | NO | NO | NO |
| 8,194,632 | ? | NO | NO | ? | NO | NO | NO | NO | NO |
| 6,519,005 | NO | NO | ? | NO | NO | NO | NO | NO | NO |
| 6,452,515 | NO | NO | ? | NO | NO | NO | NO | NO | NO |
| 8,407,609 | ? | NO | NO | NO | NO | NO | NO | NO | NO |
| 9,141,489 | NO | NO | ? | NO | NO | NO | NO | NO | NO |
| 8,949,954 | NO | NO | NO | ? | NO | NO | NO | NO | NO |

Absent a nexus requirement, basing venue on a presence as attenuated as those alleged here "could essentially reestablish nationwide venue, in conflict with *TC Heartland*, by standing for the proposition that owning and controlling computer hardware involved in some aspect of company business (*e.g.*, transmitting data) alone is sufficient," *In re Google LLC*, 914 F.3d 1377, 1381 (Fed.

Cir. 2019) (Reyna, J., dissenting from denial of petition for rehearing en banc), regardless of whether the asserted patent has anything to do with that computer hardware.

### C.      Uniloc Insufficiently Alleged an Act of Infringement in This District.

In Case No. 2:18-cv-00491 ("491-case"), Uniloc does not plausibly allege acts of infringement in this judicial district, and thus fails to meet its burden of demonstrating proper venue.  *In re ZTE (USA) Inc.*, 890 F.3d at 1013.

Although Uniloc generically alleges in Paragraph 7 of the complaints that Google has "committed acts of direct and indirect infringement in the Eastern District of Texas," this allegation is conclusory, lacks support and is a mere recitation of the statutory requirements to establish venue.  Compare  Compl. ¶ 7, with 28 U.S.C. § 1400(b) & 35 U.S.C. § 271.  Uniloc has not plausibly alleged direct infringement in this District in the 491-case.

Further, Uniloc fails to plausibly allege that Google induced or contributed to infringement in the Eastern District of Texas in the 491-case.  The complaint does not allege pre-suit knowledge of the asserted patents or the alleged infringement.  Because such knowledge is necessary for both induced and contributory infringement, Uniloc has not plausibly alleged any indirect infringement at the time the complaints were filed in the 491-case

Uniloc's complaint in the 491-case also makes bare allegations of indirect infringement that offer boilerplate language in support.  *See* 491-case Compl. ¶¶ 95-96.  Uniloc's indirect infringement allegations cite to Google webpages that generally describe Hangouts and Hangouts Meet.  *Id.* ¶ 95.  Uniloc alleges these webpages serve as evidence that Google "directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and/or user guides."  *Id.*  But Uniloc does not allege how Google's customers use the accused devices to directly infringe the asserted patents, let alone in this District.

## VI.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Where venue is improper, as it is here, the district court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Should the Court determine that it is in the interest of justice to transfer these cases for lack of venue rather than dismissing them, Google requests that the Court transfer the cases to the Northern District of California "because 'witnesses, evidence, the underlying events, and [the defendant] are based there.'" *See Moran v. Smith*, No. 5:15-cv-1121-DAE, 2016 WL 4033268, at *2 (W.D. Tex. July 27, 2016) (citation omitted). As detailed in Google's motions to transfer under 28 U.S.C. § 1404(a), transfer to the Northern District of California is appropriate. Specifically, (1) the case could have been brought there, as Google's Mountain View, California headquarters is a "regular and established place of business;" (2) the relevant evidence and witnesses are centered in California, including potentially relevant employees; and (3) the lawsuits implicate "the work and reputation" of Google and its employees in the community, which gives the Northern District of California a unique interest. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

## CONCLUSION

For these reasons, the Court should dismiss this action for lack of subject matter jurisdiction or for improper venue, or transfer it to the Northern District of California.

Date:  October 18, 2019                    Respectfully submitted:

                                            */s/ Robert Unikel, with permission by*
                                            *Michael E. Jones*
                                            Robert Unikel
                                            Direct: 312-499-6030
                                            robertunikel@paulhastings.com
                                            Michelle Marek Figueiredo (IL Bar #6297112)
                                            michellemarek@paulhastings.com
                                            Matthew Richard Lind (IL Bar #6327241)

mattlind@paulhastings.com
John A. Cotiguala (IL Bar #6311056)
johncotiguala@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Dr., 45th Floor
Chicago, IL 60606
Main: 312-499-6000
Facsimile: (312) 499-6100

Elizabeth Louise Brann (CA Bar #222873)
elizabethbrann@paulhastings.com
Ariell Nicole Bratton (CA Bar #317587)
ariellbratton@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
 Facsimile: (858) 458-3005

Robert Laurenzi (NY Bar #3024676)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue, 26th Floor
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 318-6100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
E. Glenn Thames, Jr.
State Bar No.00785097
glennthames@potterminton.com
Patrick C. Clutter
State Bar No. 24036374
patrickclutter@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Defendants Google LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on October 18, 2019.

*/s/ Michael E. Jones*

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*

NAI-1509541122v1

1