IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC 2017 LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § | Case No. 2:18-CV-00491-JRG-RSP |
| GOOGLE LLC, | § § | |
| *Defendant.* | § § | |

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

On January 8, 2020, the Court held a hearing to determine the proper construction of the disputed claim terms within United States Patent No. 6,473,114 ("the '114 Patent"). Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing (Dkt. Nos. 146, 154 & 157), having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Memorandum and Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................... 3

II. APPLICABLE LAW ............................................................................................. 3

III. THE PARTIES' STIPULATED TERMS................................................................ 5

IV. CONSTRUCTION OF DISPUTED TERMS IN THE '114 PATENT ..................... 7

    A. "replacing," "displacing," and "contracting"................................................. 8

    B. "indication of speech uttered"........................................................................ 13

    C. Order of steps of Claim 1 ............................................................................... 15

V. CONCLUSION ...................................................................................................... 19

## I. BACKGROUND

Plaintiff Uniloc 2017 LLC ("Plaintiff" or "Uniloc") alleges that Defendant Google LLC ("Defendant" or "Google") infringes United States Patents No. 6,473,114 ("the '114 Patent").

Shortly before the start of the January 8, 2020 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties' arguments and facilitating discussion. Those preliminary constructions are noted below within the discussion for each term.

## II. APPLICABLE LAW

This Court's claim construction analysis is guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the Federal Circuit reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312. The starting point in construing such claims is their ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13.

However, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. For this reason, the specification is often 'the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370 (1996)) (internal quotation marks omitted). However, it is the claims, not the specification, which set forth the limits of the patentee's invention. *Id.* at 1312. Thus, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the

patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). Other asserted or unasserted claims can also aid in determining a claim's meaning. *See, e.g., Phillips*, 415 F.3d at 1314 (explaining that use of "steel baffles" and "baffles" implied that "baffles" did not inherently refer to objects made of steel).

The prosecution history also plays an important role in claim interpretation as intrinsic evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Id.* at 1317, *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (applying this principle in the context of *inter partes* review proceedings); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation"). However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318, *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (noting that ambiguous prosecution history may be "unhelpful as an interpretive resource").

Additionally, courts may rely on extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 1317. As the Supreme Court recently explained:

> In some cases . . . the district court will need to look beyond the patent's intrinsic evidence . . . to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). However, the Federal Circuit has emphasized that such extrinsic evidence is subordinate to intrinsic evidence. *Phillips*, 415 F.3d at 1317 ("[W]hile extrinsic evidence can shed useful light on the relevant art, we have explained

that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." (internal quotation marks omitted)).

## III. THE PARTIES' STIPULATED TERMS

The parties agreed to the constructions of the following terms/phrases in their December 23, 2019 P.R. 4-5(d) Joint Claim Construction Chart.

| **Claim Term/Phrase** | **Agreed Construction** |
|---|---|
| "new conference participant" (Claim 1) | "a new speaker, not among the current conference participants" |
| "current conference participant" (Claims 1 and 2) | "a subset of participants in a conference at a given point in time" |
| "removing" (Claim 1) | "taking off the screen" |
| "images" (Claims 1 and 2) | Plain and ordinary meaning |
| "duration" (Claim 1) | Plain and ordinary meaning |

(Dkt. No. 158-1 at 1–4).[1] In view of the parties' agreement on the proper construction of the identified terms, the Court hereby **ADOPTS** the parties' agreed constructions.

During the claim construction hearing, the parties agreed to the construction of the following terms:

| **Claim Term/Phrase** | **Agreed Construction** |
|---|---|
| "first duration" | "predefined interval" |

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF rather than the page numbers assigned in the original documents unless otherwise noted.

| (Claim 1) | |

The Court finds that the term "first duration" should be construed to mean a "predefined interval." Claim 1 recites two scenarios for the displayed image of the "new conference participant." In the first scenario, the image is removed "when said speech is of a first duration." In the second scenario, the image replaces another image "when said speech is of a duration longer than said first duration." Thus, the claim language provides an either-or scenario by including the antecedent basis of "said first duration" in the second scenario. In other words, the claim language requires making a determination based on a predefined interval. This is consistent with the embodiment disclosed in the specifications. For example, the specification states the following when describing Figure 6:

> If the candidate speaker Dl stops speaking, his/her image shrinks and disappears. If the candidate speaker continues speaking *beyond a predefined interval*, the candidate speaker image Dl grows to the size of the other speakers A, B, and C and the animation sequence of FIG. 2, beginning at frame I44 is performed. Thus, the candidate now pushes the old speaker B out of the frame as illustrated in frames I44-I46.

'114 Patent at 4:9–18 (emphasis added). A comparison could not be done in this either-or scenario unless the length of time is a predefined interval. Indeed, it would not be possible because any "elapsed period of time" would be a "first duration," which would render the comparison moot because the new participant's image would always be removed. Simply stated, the antecedent basis for "said first duration" requires construing "first duration" to mean a "predefined interval."

Plaintiff originally argued that its construction is appropriate because "out of the five examples and embodiments recited by the specification, only one utilizes a 'predefined interval' in removing an image." Dkt. No. 146 at 14. The Court disagrees. The first five figures are "figurative representations" of different "changeover animations" and are not excluded by the agreed construction. These five figures relate to the types of changeover for the second scenario

when the speech is longer than the predefined interval. Moreover, instead of being merely an example, Figure 6 is the embodiment that illustrates "speaking beyond a predefined interval" or speaking beyond "said first duration" as recited in the claim language. '114 Patent at 4:13. As discussed above, Plaintiff's construction would exclude this preferred embodiment. *Vitronics Corp. v. Conceptronic,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) (such an interpretation "is rarely, if ever, correct and would require highly persuasive evidentiary support").

Plaintiff also originally argued that the Court's construction would exclude the embodiment described in Figure 2 because the specification makes "clear that the criteria may *be dynamic*, meaning it 'may change over time.'" Dkt. No. 146 at 14 (citing '114 Patent at 3:4–11) (emphasis added). First, this example does not list duration of speech as a criteria. Second, this example only indicates that who is displayed may change because their participation is dynamic. In other words, the participant's frequency of participation or recentness of speech may constantly change. In summary, Plaintiff's original construction is improper when read in the context of the claim language and ignores the sole embodiment of the "first duration" limitation in the specification.

## IV. CONSTRUCTION OF DISPUTED TERMS IN THE '114 PATENT

The '114 Patent, titled "Method and System for Indicating Change of Speaker in a Videoconference Application," issued on October 29, 2002, and bears an earliest priority date of April 14, 2000. The Abstract of the '114 Patent states:

> A videoconferencing application suitable for large conferences with many terminals where displayed speakers are changed dynamically based on some schema employs animation effects to indicate the change. When a new speaker replaces an old, the new speaker's image is gradually transitioned into the place of the old speaker's by an animation that provides a clear cue and a visual metaphor for the event. A preferred embodiment translates the new image in and the old one out as if the new one were pushing the old image out of its place. Various other animations are also described which provide a similar result.

### A. "replacing," "displacing," and "contracting"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "replacing" (Claim 1, 2) | [No construction necessary]; or, if the Court deems a construction is necessary: "changing out" | "using a noticeably gradual effect, taking the place of and taking off the screen" |
| "displacing" (Claim 2) | [No construction necessary]; or, if the Court deems a construction is necessary: "taking the place of" | "using a noticeably gradual effect, taking the place of and taking off the screen" |
| "contracting" (Claim 2) | [No construction necessary]; or, if the Court deems a construction is necessary: "decreasing in size" | "using a noticeably gradual effect, decreasing in size and taking off the screen" |

Shortly before the start of the January 8, 2020 hearing, the Court provided the parties with the following preliminary constructions for these phrases:

| Disputed Term | Court's Preliminary Construction |
|---|---|
| "replacing" | "changeover using a noticeable and gradual transition" |
| "displacing" | "taking the place of" |
| "contracting" | "decreasing in size" |

Defendant originally disputed whether the terms "replacing" and "displacing" require "taking the place of and taking off the screen" and whether the term "contracting" requires "decreasing in size and taking off the screen." During the January 8, 2020 hearing, Defendant agreed with the Court's preliminary construction for these three terms. Accordingly, the only term still in dispute is "replacing," given that the Court adopted Plaintiff's alternative construction for the terms "displacing" and "contracting."

### 1. The Parties' Positions

The parties dispute whether the term "replacing" requires "using a noticeably gradual effect" as Defendant proposes. The parties also dispute whether the term requires "taking the place of and taking off the screen" as Defendant also proposes. Plaintiff argues that the term "replacing" is sufficiently clear and requires no construction. Dkt. No. 146 at 12. In the alternative, Plaintiff contends that the term "replacing" means "changing out." *Id.* (citing '114 Patent at 4:37–40). Plaintiff argues that there is nothing in the intrinsic evidence to require "using a noticeably gradual effect." *Id.* According to Plaintiff, Defendant seeks to import limitations from the specification regarding the additional use of changeover animations. *Id.* at 12–13 (citing '114 Patent at 3:1–4:26). Plaintiff further argues that Defendant's construction is vague and unclear as to "taking the place of and taking off the screen." *Id.* at 13.

Defendant responds that its construction includes the plain and ordinary meaning of "replacing," as used in the claims. Dkt. No. 154 at 7. Defendant also argues that the specification confirms its proposed plain and ordinary meaning. *Id.* (citing '114 Patent at 2:5–12). According to Defendant, every depiction of the "replacing" step includes removing the image being replaced from the screen entirely. *Id.* (citing '114 Patent at Figures 2–6). Defendant further contends that extrinsic evidence supports its construction. *Id.* at 8 (citing Dkt. Nos. 143-4 and 143-4).

Defendant further argues that the specification is clear that "replacing" requires a noticeably gradual effect. *Id.* at 9 (citing '114 Patent at 2:5–22, Abstract). Defendant contends that the patentee defined the term "replacing" explicitly. *Id.* (citing '114 Patent at 2:19–22). Defendant argues that its construction is consistent with the primary goal of every embodiment of "replacing" in the '114 Patent. *Id.* at 10 (citing '114 Patent at 1:52–60, 2:19–22). According to Defendant, every embodiment of "replacing" in the '114 Patent consistently describes the disputed term as using a gradual transition. *Id.* Finally, Defendant argues that the '114 Patent also disclaims non-

gradual "replacing." *Id.* at 11 (citing '114 Patent at 1:52–60).

Plaintiff replies that Defendant's construction improperly imports limitations from the specification. Dkt. No. 157 at 3 (citing '114 Patent at 2:10–12, 2:52–53, 4:11–12, 4:16–18). Plaintiff argues that gradual transitions are merely preferred and that there is no language in the independent claim requiring a "gradual" replacement. *Id.* Plaintiff contends that the '114 Patents criticism of "abrupt" transitions is not enough to show a "clear disavowal" needed to construe "replacement" as "gradual replacement." *Id.* at 3–4. Plaintiff further argues that Defendant's construction improperly conflates "replacing" with "removing." *Id.* at 4. According to Plaintiff, neither claim 1 nor the specification provides a fixed rule on what happens to the image being replaced after it is replaced. *Id.* (citing '114 Patent at 3:4–11, Figure 6).

### 2. Analysis

The term "replacing" appears in asserted claims 1 and 2 of the '114 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The Court further finds that the term "replacing" should be construed to mean "changeover using a noticeable and gradual transition." Claim 1 recites a method of "indicating a change of speaker" comprising the steps of "displaying images of current conference participants" and then "displaying an image of a new conference participant responsively to an indication of speech uttered by said new conference participant." The new participant is then removed or replaces another participant based on its "duration" of speech. The specification repeatedly describes this as a "changeover." *See, e.g.,* '114 Patent at 2:34–55. The specification further indicates that this "replacing" or "changeover" requires a noticeable and gradual transition. The Summary of the Invention states the following

> When a change in the subset is required, one speaker is replaced by another in the following fashion. An animation is instantiated in which the image of the speaker

> that is to be replaced is scrolled off the screen and the new one is scrolled on as if pushing the old image off the screen. Various other alternative animations can be employed, *the common theme of them being that there is a gradual transition and the transition is conspicuous*.
>
> *To insure the animation is prominent and noticeable*, a fade would not be ideal, even though such an effect is gradual and not terribly disconcerting. Another example of a suitable effect is a peel-away effect where the old image curls up from one edge to reveal the new image below it. Still another is a fade into the distance followed by a foreshortening effect or slide-in effect. *The basic requirement is that the effect result in a gradual replacement of the image of the old speaker by a new speaker but in such a fashion as to be noticeable but visually agreeable*.
>
> A wide range of video animation effects can be produced using digital technology. These include shape changes such as gradually wrapping a planar image onto a cylinder or sphere, paper peel away effect, image breaking up into small bits and scattering, etc. Such effects are often used in football broadcasts. *The idea in the invention is not to dazzle but to provide a visual cue and metaphor for the change of a member of group, like someone coming in a room and another leaving*.

*Id.* at 2:5–32 (emphasis added). The Abstract also states, "[w]hen a new speaker replaces an old, the new speaker's image is *gradually transitioned* into the place of the old speaker's by an animation that provides a clear cue and a visual metaphor for the event." *Id*. at Abstract (emphasis added). Thus, every embodiment of "replacing" in the specification consistently describes the disputed term as a "changeover using a noticeable and gradual transition." *Bell Atl. Network Servs. v. Covad Communs. Grp.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").

Moreover, the Background of the Invention section of the specification discusses "two problems" in the prior art with managing the display of multiple participants:

> There are at least two problems. First, the sudden change from one face to another may not be very conspicuous so it *might not be noticed.* Second,[]the transition can be abrupt and may therefore be disconcerting. An improved system for making the changes in the displayed subgroup *more clear and natural is desirable.*

'114 Patent at 1:54–61 (emphasis added). Here, the patentee is clearly indicating that a changeover

using a noticeable and gradual transition is a feature of the invention because the prior art is lacking this feature. *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products . . . ."). Indeed, the specification explicitly states that the visual transitions themselves are not novel because this "technology has been around for some time." '114 Patent at 3:24–25.

Plaintiff argues that there is nothing in the intrinsic evidence to require "using a noticeably gradual effect." Dkt. No. 146 at 12. For the reason discussed above, Plaintiff's contention is incorrect. Moreover, the Court's construction does not read into the claims a particular embodiment. For example, the Court's construction includes all of the disclosed embodiments and does not exclude any of the various "animations." Instead, the Court's construction correctly captures that "the *common theme of [the animations]* being that there is a gradual transition and the transition is conspicuous." '114 Patent at 2:10–12 (emphasis added).

The Court is cognizant that to impose a limited construction, it is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012). However, as indicated above, the intrinsic evidence indicates that "replacing" requires a "changeover using a noticeable and gradual transition." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). Accordingly, the Court rejects Plaintiff's construction.

Regarding Defendant's proposed "taking the place of and taking off the screen" language,

the Court finds that it is confusing and unnecessary as it relates to the term "replacing." Claim 1 recites that the "images of said current conference participants" is replaced with "said image of said new conference participant." Thus, Defendant's construction is unnecessary and would only confuse the issue because it is redundant. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties and given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

For the reasons set forth above, the Court construes the term **"replacing"** to mean **"changeover using a noticeable and gradual transition."** The Court further construes the term **"displacing"** to mean **"taking the place of,"** and the term **"contracting"** to mean **"decreasing in size."**

### B. "indication of speech uttered"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "indication of speech uttered" (Claim 1) | [No construction necessary]; or, if the Court deems a construction is necessary: "a signal of speech" | "any momentary speech" |

Shortly before the start of the January 8, 2020 hearing, the Court provided the parties with the following preliminary construction for this term: Plain and ordinary meaning.

### 1. The Parties' Positions

The parties dispute whether the term "indication of speech uttered" requires construction. Plaintiff argues that the term "indication of speech uttered" is sufficiently clear and that, in view of the intrinsic evidence, no construction is necessary. Dkt. No. 146 at 15. In the alternative, Plaintiff contends that the term "indication of speech uttered" means "a signal of speech." *Id.* Plaintiff argues that Defendant's construction of "any momentary speech" is the speech itself and

not an indication of the speech as recited by the claim term. *Id.*

Defendant responds that its construction includes the plain and ordinary meaning of term as used in the '114 Patent. Dkt. No. 154 at 13. Defendant also argues that the specification supports its construction *Id.* at 13–14 (citing '114 Patent at 2:51–53, 4:7–9). Defendant further contends that its construction is consistent with the only embodiment of this limitation in the '114 Patent. *Id.* at 14. Defendant also argues that extrinsic evidence supports its construction. *Id.* (citing Dkt. Nos. 143-4 and 143-5). Defendant further argues that the claim language logically requires that the "indication of speech uttered" is the speech itself because it is "uttered" by the new conference participant. *Id.*

Plaintiff replies that there is no time-based length found in the limitation of "indication of speech uttered" and that there is no reason to refer to it as "momentary." Dkt. No. 157 at 5. Plaintiff argues that it is merely a signal that a new conference participant has uttered speech. *Id.* Plaintiff also contends that the extrinsic evidence is consistent with its proposal. *Id.* Finally, Plaintiff argues that Defendant's reliance on "said speech" is entirely circular because there is nothing to suggest the length of the speech in the indication itself. *Id.* at 5–6.

### 2. Analysis

The term "indication of speech uttered" appears in asserted claim 1 of the '114 Patent. The Court finds that the term should be construed to mean "audible indication of speech uttered." Claim 1 recites "displaying an image of a new conference participant responsively to an indication of speech uttered by said new conference participant." The claim language suggests that the "indication of speech uttered" is an audible indication of speech uttered. During the January 8, 2020 hearing, Defendant expressed concern that the term could be interpreted to include hand waving or background noise. Plaintiff represented to the Court that it had no objection with an

audible requirement and that it did not intend to argue that hand waving or background noise was an "indication of speech." Accordingly, to provide further clarification of the scope of the claims, the term "indication of speech uttered" is construed to mean "audible indication of speech uttered."

Turning to Defendant's construction, the Court rejects it because it is unclear and unnecessary. The claim term is an "indication of speech uttered." Defendant's construction of "any momentary speech" reads the term "indication" out of the claims. Moreover, it is unclear what "any momentary speech" in intended to mean. Defendant argues that extrinsic evidence defines "indicate" to mean "[t]o state or express briefly" or "admit to or state briefly." Dkt. No. 143 at 14 (citing Dkt. No. 143-4 at 4 (The American Heritage Dictionary of the English Language); Dkt. No. 143-5 at 4 (the New Oxford American Dictionary)).

The problem with Defendant's argument is that the disputed term is "indication" and not "indicate." Plaintiff notes that this same extrinsic evidence defines "indication" to mean "something that serves to indicate; a sign" or "a sign or piece of information that indicates something" Dkt. No. 157 at 5 (citing Dkt. No. 143-4 at 4 (The American Heritage Dictionary of the English Language); Dkt. No. 143-5 at 4 (the New Oxford American Dictionary)). The extrinsic evidence cited by Plaintiff is consistent with the claim language because it is a definition for the term actually recited in the claim. Accordingly, the Court rejects Defendant's construction. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties and given it its proper weight in light of the intrinsic evidence.

### 3. Court's Construction

For the reasons set forth above, the Court construes the term **"indication of speech uttered"** to mean **"audible indication of speech uttered."**

## C. Order of steps of Claim 1

| **Disputed Term** | **Plaintiff's Proposal** | **Defendant's Proposal** |
|---|---|---|
| Order of steps of Claim 1 | The antecedent basis in the claim governs any ordering of steps. | Claim 1 contains a list of steps that must be performed in the written order. |

Shortly before the start of the January 8, 2020 hearing, the Court provided the parties with the following preliminary construction for this term: Step A and Step B may be performed in any order with respect to one another, but both Step A and Step B must be performed before Step C or Step D.

### 1. The Parties' Positions

The parties dispute whether the steps listed in claim 1 must be performed in the order recited. Plaintiff argues that the claim language should be given its plain and ordinary meaning and that any antecedent basis recited by the claim language will govern any required order. Dkt. No. 146 at 18. Plaintiff contends that Defendant cannot show that claim 1 contains a list of steps that must be performed in the written order. *Id.* at 18 (citing '114 Patent at 4:28–40). Plaintiff argues that the claim does not recite an express order. *Id.* at 19. According to Plaintiff, at least [step a] and [step b] may be performed out of the order written. *Id.*

Defendant responds that the parties agree that current and new conference participants are distinct groups. Dkt. No. 154 at 17. According to Defendant, when a new conference participant appears as in step B, it is clear that the current participants were displayed before that (i.e., in step A). *Id.* Defendant further contends step C must occur after steps A and B because the antecedent bases for "said image of said new conference participant" and "said speech" are located in step B. *Id.* at 18. Defendant argues that logic also requires this ordering because an image cannot be removed until it is displayed. *Id.*

Defendant further argues that Step D must be performed after steps A and B because the

antecedent basis for "said images of said current conference participants" is located in step A and the antecedent bases for "said image of said new conference participant" and "said speech" are located in step B. *Id.* According to Defendant, step D must occur after steps A and B for this method to be effected. *Id.* Finally, Defendant argues that the specification consistently describes these steps as being performed in the claimed order. *Id.*

Plaintiff replies that Steps C and D are not performed "in order" because their express terms are mutually exclusive. Dkt. No. 157 at 6. According to Plaintiff, to get to step D, the new conference participant is not removed in step C. *Id.* Plaintiff argues that its construction avoids this confusion. *Id.*

## 2. Analysis

As a general rule, method claim steps are not construed to require a specific order. *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2000). Exceptions to this rule occur only if the steps actually recite or require, via grammar or logic, a specific order or if the specification "directly or implicitly requires such a narrow construction." *Altiris, Inc., v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed. Cir. 2003) (quoting *Interactive Gift*, 256 F.3d at 1342–43). Plaintiff contends that the claim language of Claim 1 should be given its plain and ordinary meaning and that any antecedent basis recited by the claim language will govern any required order of any of the steps. Dkt. No. 146 at 18. The Court generally agrees with Plaintiff's argument. Claim 1 is reproduced below, with annotations to identify the various steps:

> 1. A method of indicating a change of speaker in a videoconferencing system, comprising the steps of:
> **[STEP A]** displaying images of current conference participants;
> **[STEP B]** displaying an image of a new conference participant responsively to an indication of speech uttered by said new conference participant;
> **[STEP C]** removing said image of said new conference participant when said speech is of a first duration;
> **[STEP D]** replacing one of said images of said current conference participants with

said image of said new conference participant when said speech is of a-duration longer than said first duration.

'114 Patent at claim 1 (annotations added). Plaintiff argues that at least Step A and Step B may be performed out of the order written. Dkt. No. 146 at 19. According to Plaintiff, "there is nothing in the claim language that prevents [**step b**], the displaying of a new conference participant responsively to an indication of speech uttered by said new conference participant, from being performed before [**step a**] (or out of order in which it is written), which requires only displaying images of current conference participants." *Id.* The Court agrees. Step A has no antecedent basis requirements, and Step B has a self-contained requirement. Therefore, the method may be performed with Step B first and then Step A without any issue.

Defendant argues that Step B is logically performed after Step A because, when a new conference participant appears as in Step B, it is clear that a different subset of participants was displayed before that (i.e., in Step A). Dkt. No. 143 at 17. The problem with Defendant's argument is that claim 1 includes the open-ended transitional phrase "comprising." Nothing precludes displaying a new conference participant that enters a conference and then later displaying the other conference participants that were in the conference before the new conference participant entered.

Regarding Steps C and D, Plaintiff argues that these steps are not performed "in order" because they are mutually exclusive. Dkt. No. 157 at 6. The Court agrees to the extent that this understanding incorporates the Court's construction for the term "a first duration." The Court construes "a first duration" to mean "a predefined interval." Accordingly, if the speech in Step C is the "predefined interval," then the image of the new conference participant is removed. If the speech is longer than the "predefined interval," then the image of the new conference participant replaces one of the images of the current conference participants. Thus, the results of the steps are mutually exclusive based on the Court's construction of a "predefined interval" and are not

necessarily required to be performed "in order." In other words, to get to step D, the new conference participant is *not* removed in step C. Likewise, if the "removing" of step C occurs, then the "replacing" of step D is *not performed* for that new conference participant.

That said, Step C must occur after Steps A and B because the antecedent bases for "said image of said new conference participant" and "said speech" are located in Step B. Likewise, Step D must be performed after Steps A and B because the antecedent basis for "said images of said current conference participants" is located in Step A and also because the antecedent bases for "said image of said new conference participant" and "said speech" are located in step B.

### 3. Court's Construction

For the reasons set forth above, **Step A and Step B may be performed in any order with respect to one another, but both Step A and Step B must be performed before Step C or Step D**.

### V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered to not refer to each other's claim construction positions in the presence of the jury. Likewise, in the presence of the jury, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court. The Court's reasoning in this order binds the testimony of any witnesses, and any reference to the claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 5th day of February, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE